464 A.2d 1299

**COMMONWEALTH of Pennsylvania ex rel. Katherine G. BOWERS**

v.

**David WIDRIG, Sr.**

**Appeal of Katherine G. BOWERS.**

Superior Court of Pennsylvania.

Argued April 13, 1983.

Filed Aug. 12, 1983.

200

David A. Scholl, Bethlehem, for appellant.

David Widrig Sr., appellee, in propria persona.

Before HESTER, CAVANAUGH and POPOVICH, JJ.

HESTER, Judge:

Once again, we are confronted with a final custody order which rests upon a woefully inadequate record. Due to the fact that the lower court failed to make a comprehensive and searching inquiry into the custodial fitness of the contestants, we are constrained to remand.

The factual and procedural history of this case must be highlighted in order to understand the need for a more thorough hearing. The parties were married in 1970 and divorced in 1972; however, they continued to live together on an intermittent basis following their divorce. Three children resulted from their relationship: David, born July 27, 1970, Cheryl, born March 27, 1972, and John, born April 2, 1973. At all times when the parties were not living together, the mother, appellant herein, had sole custody of the children until August 29, 1981.

On that date, appellant left the children in the care of a babysitter. It is unclear from the record, but apparently the children were removed by their father, appellee herein, to his household. He thereafter retained custody of the three children. Appellant instituted an action in habeas corpus on November 6, 1981, to regain custody of her children. However, on November 20, 1981, a consent order was entered which stipulated that the father was to retain custody of the children provided that the mother be permitted reasonable visitation rights.

On December 8, 1981, appellant filed a petition to modify the order of November 20, 1981, based upon David's and Cheryl's expressed desire to remain with her. On January 8, 1982, the court ordered home evaluation of both parties to be conducted by the Children and Youth Division of Northampton County, with interim custody of the three

children remaining with appellee. Appellant was granted more liberal visitation rights on March 19, 1982, pending final resolution of the custody matter.

In the early morning hours of July 18, 1982, David and Cheryl, along with bags containing their clothing, were deposited on a street near their great-grandmother's home by appellee's girlfriend.[1] Appellant, who was temporarily residing in Texas at that time, immediately returned and resumed caring for her two children. Custody of David and Cheryl has since remained with appellant and is not sought by appellee. However, appellee retained custody of their youngest child, John, and it is custody of this child which is the basis for this action.

On July 23, 1982, appellant filed a petition to modify the interim order which had previously awarded custody of the three children to appellee. At a conference on this matter, a Special Master recommended that temporary custody of John be awarded to appellant, however, appellee refused to agree to this suggestion. The temporary custody of this minor was the subject of a hearing on August 20, 1982, in the Court of Common Pleas in Northampton County. The hearing, scheduled on the Miscellaneous Hearing List, was limited to one hour. At the conclusion of the hearing, the trial judge announced that he would not transfer custody of John on a temporary basis, but would instead render a determination of final custody. On September 13, 1982, the court entered an Order awarding final custody of John to appellee. Appellant thereafter filed this timely appeal.

■ Appellant contends, and as we have indicated, we agree, that the record upon which the hearing judge rested his decision did not comply with the standards enunciated by this court time and again. We have consistently emphasized that it is incumbent upon the lower courts to conduct

1. It is unclear whether appellee was present during this incident. David and Cheryl testified at the hearing conducted on August 20, 1982, that their father did accompany them that evening and threatened them if they revealed his presence. Appellee testified that he was out of town when David and Cheryl were returned to their maternal relatives.

a penetrating and comprehensive inquiry in custody matters so as to insure a complete record upon which we can base our review.[2] *In re Custody of J.S.S.*, 298 Pa.Super. 428, 444 A.2d 1251 (1982); *Commonwealth ex rel. Montgomery v. Montgomery*, 296 Pa.Super. 325, 442 A.2d 791 (1982); *Garrity v. Garrity*, 268 Pa.Super. 217, 407 A.2d 1323 (1979); *Lewis v. Lewis*, 267 Pa.Super. 235, 406 A.2d 781 (1979). The character and fitness of the parties seeking custody, their respective homes, their ability to adequately care for the child, and their ability to financially provide for the child are all critical factors which must be explored and developed below. *Gerald G. v. Theresa G.*, 284 Pa.Super. 498, 426 A.2d 157 (1981); *Kessler v. Gregory*, 271 Pa.Super. 121, 412 A.2d 605 (1979). In its penetrating inquiry, the hearing court should also consider objective testimony from disinterested impartial witnesses who can evaluate the relative environments which the parties could provide. *Commonwealth ex rel. Michael R. and Kristin Leigh R. v. Robert R.R.*, 314 Pa.Super. 335, 460 A.2d 1167 (1983); *Jones v. Floyd*, 276 Pa.Super. 76, 419 A.2d 102 (1980). Only by eliciting evidence on all of the above subjects will the hearing court be able to discharge its responsibility of securing the best interests of the child.

■ When the record is incomplete, we will remand the case to the court below so that the evidentiary facts may be supplemented. *In re Wesley J.K.*, 299 Pa.Super. 504, 445 A.2d 1243 (1982); *Commonwealth ex rel. Lettie H.W. v. Paul T.W.*, 281 Pa.Super. 262, 422 A.2d 159 (1980); *Commonwealth ex rel. Leighann A. v. Leon A.*, 280 Pa.Super. 249, 421 A.2d 706 (1980); *In re Custody of Neal*, 260 Pa.Super. 151, 393 A.2d 1057 (1978).

In the case at bar, the hearing judge listed fourteen findings of facts, some of which could only be documented by reference to pleadings or reports outside of the hearing.

**2.** We recognize that the issue of the proper scope of review to be applied in custody cases is presently before our *en banc* court in the case of *In re Donna Williams*, 674 Pittsburgh, 1981, argued May 10, 1983; however, the exercise of either the abuse of discretion standard or the broad scope of review would not affect the result of this case.

For example, the court found that appellant was receiving welfare benefits and that appellee and his fiancee earned a total of $100.00 to $150.00 weekly. Our review of the record uncovers no direct testimony as to appellant's livelihood or her financial condition. Likewise, the record is barren of any evidence concerning appellee's ability to provide for his son financially, except for one vague reference to part-time work. Yet the hearing judge concluded that the parties were on "equal footing" with regard to their financial ability to care for their son.

Similarly, the hearing judge observed that the home circumstances of the parties were comparable, yet no evidence was proffered about appellant's new residence in Texas and the type of home environment she might provide for her son. Although appellee did describe his present environment, there was no evidence presented from any disinterested objective witnesses to verify his testimony.[3]

■ The hearing judge based his decision to award custody of John to his father on several factors. First, he observed that appellant's "leaving for Texas rather than pursuing the custody matter [did not indicate] a significant concern for John's welfare." We believe that the procedural history recited above connotes a desire by appellant to seek custody of her children. At no point was this action discontinued. Moreover, no testimony was adduced at the hearing on August 20, 1982, as to appellant's motivation for her move to another state. Once again, the court's conclusion that the mother's actions did not bespeak a significant concern for her son did not rest upon a solid evidentiary foundation.

■ Another reason for the lower court's decision was its consideration of appellant's abuse of alcohol. However, the record only reveals allegations by appellee and his fiancee about appellant's abuse and reference by John to his mother's drinking. This problem was not substantiated by any

**3.** The only witnesses who testified at the hearing were the parties themselves, appellee's fiancee, and the three children, who were examined in open court.

expert testimony as to the actual existence of such abuse, the extent of her dependency, or the present effects of such use upon her child. *Gerald G. v. Theresa G., supra.* The record must thus be characterized as too inadequate to draw any conclusions regarding this aspect of appellant's character and fitness as a custodian for her son.

In addition, the hearing court stressed the desirability of continuing the established relationship between John and his father. No apparent consideration was given to the fact that John resided with his mother from birth until August of 1981. Again, no extra-familial witnesses testified as to the existing relationship between appellant and her child. The hearing court did refer to a report by a caseworker for Berks County Children and Youth Services that appellee and his son enjoyed a good relationship. However, no caseworker testified at the hearing. Furthermore, the court relied upon a report prepared by Dauphin County Children and Youth Division which concluded that John was receiving adequate care and that he expressed an emphatic preference for living with his father.

This court has continually cautioned the lower court not to consider facts or evidence dehors the record. To employ information from investigative reports when the person who prepared the reports did not attend the hearing and was not subject to cross-examination constitutes reversible error and mandates a new hearing. *Commonwealth ex rel. Michael R. and Kristen Leigh R. v. Robert R.R., supra; In re Long,* 313 Pa.Super. 47, 459 A.2d 403 (1983); *Palmer v. Tokarek,* 279 Pa.Super. 458, 421 A.2d 289 (1980); *Jones v. Floyd, supra; Rummel v. Rummel,* 263 Pa.Super. 97, 397 A.2d 13 (1979); *Wood v. Tucker,* 231 Pa.Super. 461, 332 A.2d 191 (1974). Herein, the hearing judge committed error by considering evaluations contained in such reports when the caseworkers were not available for cross-examination.

For all of the above reasons, we cannot agree with the hearing judge's assessment that he conducted a full custody hearing. Our ability to review this case is seriously

impaired by a deficient record. Accordingly, we remand this case for additional hearings wherein a full and complete record will be developed. The lower court shall address itself to all relevant facts and shall allow the introduction of any supplemental information pertinent to John's physical, intellectual, moral, and spiritual well-being. *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 296 A.2d 625 (1972).

Finally, the hearing judge shall file an opinion containing a thorough and comprehensive analysis of the record, addressing both the testimony and the law. Therein, he should "indicate the grounds for selecting the particular findings, and the reasoning process by which [he] reached his ultimate conclusion." *Commonwealth ex rel. Newcomer v. King,* 301 Pa.Super. 239, 245, 447 A.2d 630, 633 (1982).

Order vacated and remanded for proceedings consistent with this opinion. Proceedings should be held with "utmost dispatch". *In re Interest of La Rue,* 244 Pa.Super. 218, 235, 366 A.2d 1271, 1280 (1976). Either party subsequently aggrieved by the lower court's ultimate order may then take a new appeal to this court. Jurisdiction is hereby relinquished.[4]

---

**4.** In light of our decision to remand for further hearings, we will not address appellant's alternate argument that the lower court erred in awarding custody of John to appellee.