**Joseph NEY, Appellant**

v.

**Kristina L. NEY, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 17, 2006.
Filed Feb. 7, 2007.

---

Karl R. Hildabrand, Hershey, for appellant.

Howard B. Krug, Harrisburg, for appellee.

BEFORE: MUSMANNO, TODD and TAMILIA, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 Joseph Ney ("Father") appeals from the Orders entered by the trial court in this child support/spousal support case. We reverse and remand for further proceedings.

¶ 2 The trial court summarized the history of this case as follows:

The parties, [Kristina Ney ("Mother")] and [Father] were married in November 2000 and separated sometime prior to July 22, 2004. They are the parents of one daughter, currently four years of age. At the time of separation, [Mother] had primary physical custody of their child. On July 22, 2004, [Wife] filed a complaint seeking child and spousal support from [Husband]. (No. 1729 DR 2004) Following an office conference, this court issued a child and spousal support order from which [Wife] sought *de novo* review. Upon the parties' request, the *de novo* hearing was delayed pending custody hearings. On December 21, 2004, [the trial court] issued a custody order granting [F]ather the majority of physical custody. (No. 2285 CV 2004) As a result, on December 27, 2004, [Father] filed a complaint seeking child support from [Mother]. (No. 45 DR 2005) In light of the custody change and [Father's] child support complaint, the parties agreed that the action be remanded for another conference hearing. Following the second office conference, [the trial court] issued three recommended child and spousal support orders with varying effective dates reflecting the change in custody and changes in [Father's] actual income. In determining the amount of child and spousal support due, the conference officer determined that [Father's] actual net monthly income was $4,224.26 for the period from July 22, 2004 through December 21, 2004; $3,202.79 from December 22, 2004 through April 3, 2005, and $2,909.98 from April 4, 2005 forward. Both parties requested *de novo* review.

The sole issue addressed at the October 7, 2005 *de novo* hearing was [Father's] income/earning capacity. [Fa-

ther], currently 39 years old, has been employed in the trucking industry for twenty years including the last ten years with the trucking firm[,] Estes Express Lines. From 2001 until April 4, 2005, he was the terminal manager at the firm's Kutztown office. In 2004, he earned approximately $68,000 gross, or $4,224.26 net per month as determined by the conference officer under the Support Guidelines. [Father] testified that on February 15, 2005, "out of the clear blue," he was told by his immediate supervisor[,] Mr. Griest[,] that he was being demoted and transferred to the York terminal as a fill-in supervisor as of April 4, 2005. [Father] received a letter the next day informing him that his salary would be reduced by $9,196 per year and that he would no longer be eligible for up to $16,000 in yearly bonuses (which he traditionally received), as well as employer-provided weekly gas tank fill ups, a total loss of over $25,000 in gross yearly income. [Father] testified that he was informed that "higher ups" in the company considered him no longer qualified to be manager after [Father] had informed them he could not be available on-call 24/7 due to having primary physical custody of his daughter.

[Mother] noted that at the December 21, 2004 custody hearing, [Father] had represented to the court that his employer would have no problem adjusting his hours as needed (in light of his custody request). [Father's] testimony from the custody hearing was that as of May 2004, he no longer had to put in long hours at his job because he could make many of the necessary managerial decisions from his cell phone. He also testified in the custody hearing that both Mr. Griest and Mr. Griest's boss "would have no problem adjusting my hours to whatever I need them to be."

[Father] countered that while Mr. Griest told [Father] he would work with him, the decision to demote [Father] came from Mr. Griest's bosses and that the issue was out of Mr. Griest's control. [Father] did admit that in the almost eight months since he was informed of his demotion on February 15, 2005, through the date of the *de novo* hearing on October, 2005, he had sent out only one job application, though he claimed that he was actively looking for jobs.

At the conclusion of the *de novo* hearing, [the trial court] held that [Father] should be held to his 2004 income/earning capacity of $4,224.26 net per month for all time periods and directed that the Domestic Relations Section prepare appropriate orders. Accordingly, on February 14, 2006, [the trial court] issued two orders, one under each docket number, reflecting the recalculation of the parties' support obligation using [Father's] net monthly earning capacity....

Trial Court Opinion 5/11/06, at 1–3 (citations omitted). Father thereafter filed the instant timely appeal.

¶ 3 Father presents the following claims for our review:

[1.] Did the trial court err as a matter of law in presenting and considering hearsay evidence, *sua sponte*, of jobs alleged[ly] available to [Father] on a website on the internet in its assessment of his income and/or income potential for child support and spousal support/[alimony *pendente lite]* purposes?

[2.] Did the trial court err as a matter of law in assessing [Father] for child support and spousal support/[alimony *pendente lite]* purposes, at the higher income of his former job, rather than the lower income of his current job, when his employer had transferred him

and reduced his salary through no fault or involvement of [Father]?

Brief of Appellant at 5 (issues renumbered for purposes of this Memorandum).

¶ 4 In *Christianson v. Ely*, 575 Pa. 647, 838 A.2d 630 (2003), the Pennsylvania Supreme Court set forth the following standard of review in child support matters:

In our appellate review of child support matters, we use an abuse of discretion standard. A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure Governing Actions for Support ... or abused its discretion in applying these Rules. An abuse of discretion is "not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused. This is a limited role and, absent a clear abuse of discretion, the appellate court will defer to the order of the trial court. A finding of abuse is not lightly made but only upon a showing of clear and convincing evidence.

*Id.* at 634 (quotations and citations omitted).

¶ 5 In this case, Father sought a modification of his child support obligation based upon a reduction in his actual earnings. "Where a party voluntarily accepts a lower paying job, there generally will be no effect on the support obligation." Pa.R.C.P. 1910.16–2(d)(1). "[T]o modify a support obligation based upon the reduced income, a petitioner must first establish that the voluntary change in employment which resulted in a reduction of income was not made for the purpose of avoiding a child support obligation and secondly, that a reduction in support is warranted based on petitioner's efforts to mitigate any in-come loss." *Grimes v. Grimes*, 408 Pa.Super. 158, 596 A.2d 240, 242 (1991); *accord Dennis v. Whitney*, 844 A.2d 1267, 1269 (Pa.Super.2004).

Effectively, [an][a]ppellant "must present evidence as to why he or she voluntarily left the prior employment and also as to why the acceptance of a lower paying job was necessary." *Id.* Where a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity. Pa.R.C.P. 1910.16–2(d)(4). A determination of earning capacity must consider the party's age, education, training, health, work experience, earnings history, and child care responsibilities.

*Dennis*, 844 A.2d at 1269 (quoting *Kersey v. Jefferson*, 791 A.2d 419, 423 (Pa.Super.2002)).

¶ 6 Father first claims that the trial court abused its discretion when it *sua sponte* considered hearsay evidence not of record in assessing his credibility and determining his earning capacity. According to Father, the trial court conducted "an impromptu internet search for trucking jobs" during the *de novo* hearing. Brief of Appellant at 19. Father asserts that the trial court used this evidence in determining that Father had not seriously pursued a higher paying job. *See id.* at 19–20. Father also argues that the trial court apparently used this evidence in assessing Father's credibility. *Id.* at 20.

¶ 7 A trial court may not consider evidence outside of the record in making its determination. *Eck v. Eck*, 327 Pa.Super. 334, 475 A.2d 825, 827 (1984). "Nor may this court uphold a trial court's order on the basis of off-the-record facts." *Id.* (citing *In re Frank*, 283 Pa.Super. 229, 423 A.2d 1229 (1980)). Upon our review of the record, we conclude that the trial court

improperly considered evidence outside of the record in rendering its determination.

¶ 8 At the *de novo* hearing, the trial court first received into evidence Father's offer of proof. In that offer, Father presented evidence that, upon becoming the primary custodian of his daughter, his employer notified him that he no longer qualified as the terminal manager at the company's Kutztown terminal. N.T., 10/7/05, at 10–11. Father's employer, Estes Express Lines ("Estes"), transferred Father to its York terminal, with a reduction in pay. *Id.* at 11. Father offered that he had nothing to do with his change in earnings, and that his transfer was outside of his control. *Id.* at 13.

¶ 9 During cross-examination, Father explained that he was transferred to the York terminal because he was no longer available "24/7[.]" *Id.* at 14. In response to a question by the trial court, Father indicated that he is an at—will employee. *Id.* at 20. During re-direct examination, Father testified that he had been employed in the trucking industry for twenty years. *Id.* at 23. According to Father, there was nothing that would improve his current employment situation at the York terminal. *Id.*

¶ 10 Regarding his efforts to seek a higher paying position, Father testified that he had made informal inquiries regarding the possibility of other positions. *Id.* In the course of these inquiries, Father learned of available positions for a person with his qualifications. *Id.* However, these positions were at a lower salary level. *Id.* Father also stated that because of his child, he did not feel that he could pursue employment outside of Central Pennsylvania. *Id.* at 24.

¶ 11 During cross-examination, the following exchange took place:

Q. [Mother's counsel]: May I follow up, Your Honor?

THE COURT: Where is Mountaintop, Pennsylvania?

[Father]: Up near Wilkes–Barre, ma'am.

THE COURT: They're looking for an operations manager.

[Father]: I looked at transportation, and it gives all areas.

THE COURT: Ward Truckload Express out of Philly is looking for somebody. There's so many jobs. Shiremanstown, Pennsylvania, where is that?

[Father]: Again, that company is distribution. They're looking for a logistics manager. They're looking for someone with five to ten years experience logistics manager in the warehouse.

The warehouse logistics position, a lot of those incomes are going to come in right where I am in the 45 to 50,000 range.

THE COURT: Shiremanstown's got that one. There's an operations manager at Snyder National in Harrisburg. They're looking for somebody.

I mean I have just gone through page two of 11 out of 1,064 jobs related to things you do. I'm just looking at the top ones, and that's just one Web site. I have given you a sheet with two sheets of Web sites.

Here. It appears—you know, the problem is the drop in income is a definite problem. And I think part of the problem here are the representations that were made at the custody trial. You got custody. Then you want support dropped.

*Id.* at 24–25.

¶ 12 Thus, our review of the record discloses that Father presented evidence that his reduction in income was not voluntary, as well as evidence regarding his efforts to mitigate his loss of income. Specifically, Father presented evidence that he had

been unable to find job openings in his region, at an appropriate salary level, for a person with his qualifications. *See* N.T., 10/7/05, at 23, 24–25. The only other evidence of record regarding available positions, at an appropriate salary level, for a person of Father's experience was the trial court's reference to its own internet job search. *Id.* at 24–25.

¶ 13 In addressing Father's claim that the trial court improperly considered this evidence, the trial court stated the following:

> Finally, [Father] argues that the [trial] court erred in presenting and considering hearsay evidence, *sua sponte*, of jobs allegedly available to [Father] on a website on the internet in its assessment of his income and/or income potential for child support and spousal support purposes. At the *de novo* hearing, after [Father] represented to the court that the trucking market was full, I quickly conducted an impromptu internet search for trucking jobs in the area and informed the parties of a few of my findings. This information was not used in assessing [Father's] earning capacity[,] but was merely demonstrative of the types of efforts that could be made for a job search, which [Father] had obviously not seriously pursued.

Trial Court Opinion, 5/10/06, at 6.

¶ 14 Despite the trial court's assertions, earlier statements in its Opinion would indicate that the trial court considered its internet search in assessing Father's credibility and in determining that Father willfully failed to seek appropriate employment:

> While it [ ] can be argued that [Father's] income reduction was involuntary, the record is nevertheless clear that from the date he was notified of his demotion, [Father] willfully failed to seek appropriate employment; he has made practically no effort to mitigate his income loss

and find a job commensurate with his earning capacity. Despite having been provided seven weeks notice that his income would be drastically reduced and having another six months prior to the *de novo* hearing to seek appropriate employment, [Father] submitted only a single job application and had not a single job interview in that period. This court found [Father's] assertion that he otherwise actively sought a job commensurate to his skills and earning capacity not credible.

\* \* \*

> In light of the facts that [Father] has not made a reasonable effort to find appropriate employment and that his current actual earnings diverge significantly from his earning capacity, it is proper to use [Father's] earning capacity for the purpose of determining his support obligations. . . .

*Id.* at 5 (citations omitted).

¶ 15 It is apparent that the trial court found that Father willfully failed to seek appropriate employment based upon its own internet job search. There is no other evidence of record that there were suitable positions available, and that Father failed to apply for these positions. Thus, we conclude that the trial court abused its discretion when it considered and relied on this evidence.

¶ 16 On this basis, we reverse the Orders of the trial court, and remand for a determination of Father's earning capacity based only upon the evidence of record. In light of our holding, we need not address Father's remaining claim of error.

¶ 17 Orders reversed; case remanded for further proceedings consistent with this Opinion; jurisdiction relinquished.