**M.P., Appellant**

**v.**

**M.P., Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 21, 2012.
Filed Oct. 5, 2012.

Judith C. Lewis, Scranton, for appellant.

David J. Ratchford, Scranton, for appellee.

BEFORE: STEVENS, P.J., BENDER, J., and GANTMAN, J.

OPINION BY BENDER, J.

M.P. (Mother) appeals from the order entered on November 15, 2011, prohibiting her from traveling with her and M.P.'s (Father) daughter, born in June of 2008, to Ecuador to visit with extended family for three weeks. We reverse.

This present litigation began on July 14, 2011, when Mother filed a custody petition seeking permission to travel with her daughter to Ecuador, where Mother had been born and grew up.[1] Father opposed the grant of the petition and a hearing was held on November 4, 2011, at which Mother, Father, and Pastor Patricia Lee testified. The following background information was gleaned from the hearing testimony, the trial court opinion, and other documents of record. The parties were married, but are now separated, and Mother, who has obtained legal residency in the United States, sought a protection from abuse (PFA) order against Father in 2009. By order entered on July 20, 2009, the court granted Mother's PFA petition, and awarded her primary custody of the parties' child with Father allowed supervised visitation for two hours per week.[2] However, Father did not take this opportunity to visit with his child during the eighteen month period prior to the November 4, 2011 hearing. He testified that the court had not informed him that Pastor Patricia Lee was approved to supervise the visits. However, Pastor Lee tes-

---

1. At argument, the panel was informed that due to Father's opposition and apparent refusal to sign a document allowing the parties' daughter to travel with Mother to Ecuador, a court order was necessary.

2. The PFA remained in effect until June of 2012. N.T., 11/4/11, at 50.

tified at the same hearing, indicating that she had contacted both Mother and Father and met with Mother and child, but that Father later contacted her, stating that "he was unable to do the visits at that time." N.T., 11/4/11, at 55. Additionally, we note that "[o]n October 26, 2011, the Parties agreed to maintain the status quo with regards to the aforementioned custody schedule. On November 4, 2011, the Parties agreed Mother would enjoy sole legal custody of the Minor Child, and Father would exercise supervised partial physical custody with the Minor Child at the Employment Opportunity and Training Center...." Trial Court Opinion (T.C.O.), 1/12/12. at 1.

At the November 4th hearing, Mother testified about her desire to take her daughter to Ecuador to visit her parents (the child's maternal grandparents) and her extended family for three weeks. Mother explained that it would be difficult for the grandparents to obtain visas and that the grandmother's health issues made flying to the United States very difficult. Mother also indicated that her aunt is the only family member who has been able to come to the United States and visit her and the child on a few occasions (in 2009, 2010 and 2011). Mother further explained that she and the child would be staying with the grandparents on their farm, which has a working telephone and is near medical and hospital facilities. She also stated that if something happened to her, her aunt could care for the child, who speaks Spanish and understands English.[3]

In response, Father testified that, although he has never been to Ecuador or met Mother's family, except for her aunt

when she visited, he opposes Mother's trip. Although he did acknowledge that Mother's parents had had difficulty obtaining visas to come to the United States, he claims that Ecuador is a third world country, that "there are different diseases, diseases I don't know anything about[,]" and crime. N.T. at 39. Father also testified that he worried that if the child got sick, her current health insurance would not be accepted, and that if something happened to Mother, he would have difficulty and it would be expensive to get the child returned to the United States.

At the close of testimony, the court took the matter under advisement and then on November 15, 2011, issued its order without any explanation, directing that Mother "shall not remove Child ... from the United States to Ecuador." Order, 11/5/11.[4] Mother filed a timely appeal, raising the following three issues:

1. Whether the trial court committed an error of law when it denied Appellant, mother, the right to take her child to visit the child's extended family despite the parties' agreement for Mother to have sole legal custody of the child pertaining to medical, educational, and religious decisions and the fact that Mother has always acted in the best interest of the child?

2. Whether the trial court erred in denying Mother the right to travel to Ecuador with the minor child to visit the child's extended family where its decision was based on evidence obtained dehors the record, was in contravention of the best interest of the child, and was not supported by the competent evidence in the record?

---

**3.** A vast majority of the questioning of Mother by Father's attorney centered on circumstances of a highly speculative nature, i.e., Mother was presented with scenarios about

what would happen to the child if Mother was injured or died.

**4.** Mother's request for reconsideration was denied.

3. Whether the trial court erred as a matter of law when it failed to delineate the rationale for its Order dated November 15, 2011, pursuant to 23 Pa.C.S. § 5323(d)?

Mother's brief at 4.

■■■ In addressing custody issues, we are guided by the following:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*Durning v. Balent/Kurdilla,* 19 A.3d 1125, 1128 (Pa.Super.2011) (quoting *A.D. v. M.A.B.,* 989 A.2d 32, 35–36 (Pa.Super.2010) (internal quotations and citations omitted)).

■■ Initially, Mother asserts that "she has been the primary caretaker of the minor child since [the child's] birth" and "has always acted in the best interest of the child and made decisions that place priority on the needs and safety of the child." Mother's brief at 10. Mother particularly notes that Father had not seen the child for eighteen months and had agreed "that Mother would have sole legal custody pertaining to medical, educational, and religious decisions affecting the minor child." *Id.* More particularly, Mother contends that the court's decision amounted to a *de facto* award of shared legal custody that contravened the parties' agreement. We agree.

We first note that "legal custody" is defined as "[t]he right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions," and "sole legal custody" is "[t]he right of one individual to exclusive legal custody of the child." 23 Pa.C.S. § 5322(a). Moreover, to respond to Mother's argument, we rely on *Hill v. Hill,* 422 Pa.Super. 533, 619 A.2d 1086 (1993). In *Hill,* the trial court awarded the parents shared legal custody, but directed that "[i]n the event of disagreement, [m]other's preference shall prevail." *Id.* at 1088. On appeal to this Court, the father asserted that the trial court's decision essentially granted the mother sole legal custody. This Court recognized that although the trial court sought to grant the parties shared legal custody, it attempted to forestall their return to court. However, we held that the father was given shared legal custody "in name only [but] deprived … of a legal remedy because he was already awarded 'shared legal custody.'" *Id.* We further recognized that "[t]here is no provision in the law for the order the court issued." *Id.* In other words, "the concept of shared legal custody does not contain the principle of giving one parent final authority in the event of a dispute." *Id.* at 1089.

Here, the opposite scenario is presented. When one parent has sole legal custody,

that parent has final authority to make decisions, regardless of whether the other parent agrees or disagrees. Instantly, the trial court allowed Father to counter Mother's decision to take the child to Ecuador for three weeks, which in essence gave him the control, *i.e.,* the power that he would have if he had shared legal custody. This decision by the trial court was made despite Father's failure to exercise his supervised visitation for eighteen months, a schedule that was allowed pursuant to the PFA order. He had not seen the child during this entire period and had no input into any decision made by Mother. Moreover, Father's agreement that Mother should have sole legal custody in effect emphasizes that he believes Mother has made proper decisions regarding the child's best interests. Thus, based on the dictates of *Hill* and our discussion *supra,* we conclude that the court abused its discretion by acknowledging that Mother had sole legal custody, but then prohibiting her traveling with the child to Ecuador.[5]

■ Next, we review Mother's second and third arguments, which attack the court's reliance on evidence outside the record and its failure to provide a rationale for its denial of Mother's petition. We conclude that Mother should not have been denied her right to take the child for a three-week trip to Ecuador for the following reasons. Specifically, the court stated that "Mother failed to provide any assurance that a custody order entered by the Court would be afforded comity by an Ecuadorian Court, either by way of a mirror order or through utilization of The Hague Convention on the Civil Aspects of International Child Abduction treaty."

T.C.O. at 6.[6] Although no testimony was provided by either party that referenced The Hague Convention or any international treaty, in its opinion, the trial court noted that both the United States and Ecuador are signatories to the treaty. Then it outlined the web sites it visited regarding The Hague Convention and, in particular, Ecuador's noncompliance in 2004, 2005, 2006 and 2008, "due to a lack of a central authority and lack of progress in resolving cases." *Id.* at 7. The court reasoned that:

> The possibility the Minor Child may be left with her great aunt in Ecuador, together with Ecuador's history of noncompliance with the Convention, led the Court to the conclusion that it was not in the best interests of the Child to visit a country which may result in her being separated from her natural father for a long period of time, while also concurrently being subjected to a resulting custody dispute between Mother's family and Father. Beyond speculating what may or may not occur to the Mother or Minor Child while in Ecuador, there exists a reasonable alternative to a three week trip to Ecuador. Mother testified she owns a computer with internet access, and that her sister, brother and aunt in Ecuador also own a computer with internet access. Both Mother and Mother's aunt possess the necessary technology to orchestrate a meeting via Skype web conferencing. While not as personal as a real-time meeting, the court felt it was a reasonable alternative considering the uncertainty surrounding

5. Moreover, the court's discussion regarding the insufficiency of Mother's evidence, *i.e.,* medical evidence proving that the maternal grandmother could not travel to the United States, has little or no relevance to Mother's request to travel to Ecuador.

6. In a footnote, the court explained that a mirror order "provide[s] enforcement of United States court's orders in other countries." T.C.O. at 6 n. 2.

the enforceability of a Pennsylvania Order in an Ecuadorian Court.

T.C.O. at 7–8.

To support her contention that the court abused its discretion in considering facts and evidence outside of the record, Mother relies on *Ney v. Ney*, 917 A.2d 863 (Pa.Super.2007), wherein this Court stated:

> A trial court may not consider evidence outside of the record in making its determination. *Eck v. Eck*, 327 Pa.Super. 334, 475 A.2d 825, 827 (Pa.Super.1984). "Nor may this court uphold a trial court's order on the basis of off-the-record facts." *Id.* (citing *In re Frank*, 283 Pa.Super. 229, 423 A.2d 1229 (Pa.Super.1980)).

*Id.* at 866. The *Ney* case involved a support matter in which a father claimed that his reduction in income was not voluntary. He presented evidence regarding his efforts to mitigate his loss of income, but stated he was "unable to find job openings in his region, at an appropriate salary level, for a person with his qualifications." *Id.* at 868. The *Ney* court's review of the record recognized that the father had presented this evidence, but, further, noted that "the only other evidence of record regarding available positions, at an appropriate salary level, for a person of Father's experience was the trial court's reference to its own internet job search[,]" which took place during the hearing. *Id.* Thus, because the trial court found the father willfully failed to seek appropriate employment based upon its own internet job search, this Court on appeal held that the trial court abused its discretion when it considered and relied on this other evidence.

Likewise, we conclude that the trial court here abused its discretion by relying on information it obtained through its own internet search that took place after the hearing had been concluded and while un-der advisement by the court. Even if we were to conclude that the court could take judicial notice of the information regarding The Hague Convention pursuant to Pa. R.E. 201 ("Judicial notice of adjudicative facts"), Mother was unaware that the court relied on this information until after she filed the appeal in this matter. Pursuant to Pa.R.E. 201(e), Mother was entitled "to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." Since Mother was unaware of the court's actions, she was unable to respond to them. The trial court's November 15, 2011 order that Mother appealed from contained no explanation or reasoning that explained what the court relied on when it denied Mother's trip with her daughter. Mother was made aware for the first time that the court relied on information it had gathered from its own internet search when the trial court issued its opinion on January 12, 2012.

In her brief, Mother counters the information the court relied on from its internet search, stating that "[a] review of reports from the past 6 years shows that Ecuador was in compliance with [T]he Hague Convention in the 2007, 2009, 2010, and 2011 Reports of Compliance." Mother's brief at 16. Thus, Mother asserts that her due process rights were violated by the court when it relied on evidence not of record and, specifically, because it neglected the most recent information on Ecuador's compliance with The Hague Convention. Additionally, Mother identifies the requirement that a court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." Mother's brief at 24 (quoting 23 Pa.C.S. § 5323(d)). Here, the court's opinion concedes that it did not provide the reasoning for its order until it presented its rationale in its Pa.R.A.P. 1925(a)(2)(ii) opinion. *See* T.C.O. at 8. Accordingly, we agree with Mother's positions relating to both her second and third

issues and, therefore, conclude that the trial court erred as a matter of law and/or abused its discretion when it relied on evidence outside the record and failed to provide its reasoning until the appeal was taken.

Lastly, we acknowledge that the trial court listed the factors to be considered when awarding custody as set forth in 23 Pa.C.S. § 5328(a)(1)-(16). The trial court also emphasized that in determining the best interests of the child "weighted consideration [should be given] to those factors which affect the safety of the child...." T.C.O. at 3. The court further highlighted the importance of giving "positive consideration to the parent who has been the primary caregiver." T.C.O. at 4 (quoting *Collins v. Collins*, 897 A.2d 466, 473 (Pa.Super.2006)). However, despite recognizing these statements of law, the court then provided the following reasons for its decision:

> The Court submits Mother is the primary caregiver of the Minor Child since birth, and thus has solely performed the parental duties relating to the Minor Child. Further, the Court appreciates the importance of a child developing a close relationship with the extended family of both natural parents. However, the lack of credible evidence surrounding Maternal Grandmother's alleged illness/physical ailment, as well as a lack of evidence regarding whether an order entered by the Court would be afforded comity in Ecuador, most affected the Court's decision to deny Mother's Petition.

T.C.O. at 4.

As noted *supra*, the maternal grandmother's ability to travel to the United States is of no moment as it relates to Mother's right to travel with her daughter to Ecuador. Moreover, the trial court's reliance on facts that it found in its own internet search cannot be the foundation of any fact or any conclusion based upon that fact. Therefore, for all the reasons stated above, we reverse the trial court's order denying Mother's petition to travel with her daughter to Ecuador. Rather, in an accompanying order we grant Mother permission to travel to Ecuador with the child without the consent of Father.

Order reversed. Mother granted permission to travel to Ecuador with child and without Father's consent.