**[J-96-2019] [**OAJC**: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 25 MAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court at No. 1893 MDA 2017 dated |
| | : | August 31, 2018 Affirming the Order |
| v. | : | dated October 26, 2017, filed |
| | : | October 31, 2017, of the Lycoming |
| | : | County Court of Common Pleas, |
| TODD DANIEL HOOVER, | : | Criminal Division, at No. CP-41-CR- |
| | : | 2120-2012 |
| Appellant | : | |
| | : | ARGUED: November 19, 2019 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                                    **DECIDED: May 19, 2020**

I agree with the learned Opinion Announcing the Judgment of the Court ("OAJC")

that, as a general matter, 42 Pa.C.S. § 5505 authorizes a trial court to modify or to rescind

an order terminating a sentence of intermediate punishment, so long as the parties had

notice before the original order was vacated and so long as the rescinded order had not

yet been appealed. That said, I disagree with the OAJC's assessment of the trial court's

utilization of that authority in this case. Because the record contains no evidence to

support its decision, the trial court's decision to rescind its order terminating Todd

Hoover's intermediate punishment sentence necessarily was an abuse of discretion.

Nonetheless, I agree with the OAJC's ultimate conclusion that, although the statute

technically authorized the trial court's rescission of its order terminating Hoover's

intermediate punishment sentence, the effect of that rescission violated Hoover's due

process rights. Thus, I concur in the result reached by the OAJC.

Section 5505 provides that, "[e]xcept as otherwise provided or prescribed by law,

a court upon notice to the parties may modify or rescind any order within 30 days after its

entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S. § 5505. By its own terms, the statute is broad in its scope, containing no prescribed limitations on the type or character of orders that are subject to modification or revocation. Indeed, the statute empowers trial courts to alter or revoke "any" order within thirty days of its issuance. Clearly, then, the order at issue in this case—one that released Hoover from intermediate punishment—constitutes such an order and falls within the purview of the statute, provided that the other statutory criteria are met. When the trial court subsequently revoked that order, the parties had been notified, the order had not yet been appealed, and thirty days had not elapsed. And, as the OAJC explains, there exists no other statute or rule in Pennsylvania that otherwise would preclude vacatur of the type of order revoked in this case. *See* OAJC at 8-9.

The General Assembly's use of the word "any" plainly demonstrates its intent to subject every type of court order to modification or revocation, with no exceptions, including judgments of sentence. However, that an order terminating intermediate punishment *can* be revoked or modified under Section 5505 does not mean that it *should* be. To the contrary, in my view, courts should exercise considerable restraint in their discretionary invocation of Section 5505 under these, and similar, circumstances. As Judge Kunselman cogently pointed out in her dissent below, Section 5505 was enacted with the intent of providing trial courts with the authority to correct errors or reconsider factual determinations before an appeal is taken, in part, one must assume, in an effort to conserve judicial resources by stemming off a costly and time-consuming appeal. *Commonwealth v. Hoover*, No. 1827 MDA 2017, 2018 WL 4215020, Dissenting Memorandum, slip op. at 4 (Pa. Super. Aug. 31, 2018) (Kunselman, J., dissenting). The statute was not enacted to provide trial courts with an unrestrained mechanism to reconsider their earlier exercises of discretion, nor was the statute meant to afford courts

an opportunity to run the order, or the defendants subject thereto, through a thirty-day test period to ensure that the order was effective or wise, or that the particular defendant was deserving of, or capable of complying with, the terms of the order. It takes little imagination to envision how this power can become troublesome when wielded in a manner contrary to its intent. Fortunately, the OAJC's due process ruling—which I understand to require trial courts to provide specific notice to defendants about the terms and conditions that could result in vacatur of orders releasing those defendants from criminal sentences—will go a long way toward curbing the potential for abuse.

The power to modify or revoke orders is not unchecked. Although this Court has not yet opined on the matter, it has become well-established in Pennsylvania law that Section 5505 is a discretionary authority, albeit a broad one, and thus subject to an abuse of discretion standard of review upon appeal. *See Haines v. Jones*, 830 A.2d 579, 584 (Pa. Super. 2003) ("Under [S]ection 5505, the trial court has broad discretion to modify or rescind an order, and this power may be exercised *sua sponte* or invoked pursuant to a party's motion for reconsideration."); *Justice v. Justice*, 612 A.2d 1354, 1357 (Pa. Super. 1992) (*per curiam*) (explaining that invocation of Section 5505 is "almost entirely discretionary"). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Baumhammers*, 960 A.2d 59, 86 (2008) (internal quotation marks and citation omitted).

It is axiomatic that a judgment, even a discretionary one, must be based upon the facts of record presented to the jurist. Our courts consistently have held that a trial court abuses its discretion by rendering judgments based upon facts *dehors* the record, or facts that the court independently investigated and uncovered. *See M.P. v. M.P.*, 54 A.3d 950,

955 (Pa. Super. 2012); *Ney v. Ney*, 917 A.2d 863, 866-67 (Pa. Super. 2007); and *Eck v. Eck*, 475 A.2d 825, 827 (Pa. Super. 1984). Hoover relies upon these cases in asserting that the trial court's decision to revoke the order terminating his intermediate punishment was an abuse of discretion, because, he correctly points out, the revocation hearing was not transcribed. Thus, when an appellate court reviews the certified record generated in this case, no evidence supporting the trial court's decision, including the fact that Hoover was arrested for DUI on the date that the trial court released him from intermediate punishment, can be found. I agree. The record does not support the court's decision.

The OAJC rejects Hoover's reliance upon *M.P.* and *Eck*, finding them distinguishable because neither case involved Section 5505, and because, in both cases, "the parties had no notice of, or opportunity to respond to," the extra-judicial evidence relied upon by the trial courts in those cases." OAJC at 10. Noting that Hoover had notice of the evidence—his new DUI arrest—that purportedly formed the basis of the trial court's decision in this case, the OAJC concludes that neither *M.P.* nor *Eck* influence this case. Respectfully, I disagree, as I do not believe that notice of evidence is the dispositive aspect of this analysis.

In *Eck*, the Superior Court reviewed a trial court's decision to overrule a divorce master's recommendation to award alimony to the wife in the dispute. *Eck*, 475 A.2d at 827. The master had recommended that the wife be awarded alimony, in part, because she cared for her elderly, blind mother. *Id.* at 826. The husband filed exceptions to the alimony award, which the trial court granted, denying alimony to the wife. *Id.* at 827. In the trial court's opinion in support of its order, the trial court explained that, among other things, the wife had failed to demonstrate that she could not obtain meaningful employment due to the onus of caring for her blind mother, a burden that she assumed voluntarily. More importantly for present purposes, the trial court also had learned by a

letter that was not a part of the evidentiary record that the wife's mother had passed away since the master's hearing and recommendation. *Id.*

The Superior Court found that the trial court's decision constituted an abuse of discretion. To reach this decision, the Superior Court refused to consider the evidence of the wife's mother's passing, predicating that ruling upon the well-founded axiom that "a trial court may not consider facts or evidence *dehors* the record in making its determination." *Id.* (citing *Commonwealth ex rel. Bowers v. Widrig*, 464 A.2d 1299, 1302 (Pa. Super. 1983)). With regard to the role of an appellate court under such circumstances, the Superior Court then emphasized that a reviewing court may not "uphold a trial court's order on the basis of off-the-record facts." *Id.* (citing *In re Frank*, 423 A.2d 1299 (Pa. Super. 1980)). The court proceeded to review the of-record evidence, and found that the trial court had abused its discretion in overruling the master's well-founded recommendation. *Id.* at 828. Notably, the wife undeniably would have been on notice that her mother had died, yet that notice did not render the otherwise extra-record information available to be used against the wife, as today's OAJC would do against Hoover.

In *M.P.*, a mother filed a custody petition seeking permission to take her daughter out of the country to visit relatives. *M.P.*, 54 A.3d at 951. The father opposed the petition and, after a hearing, the trial court entered an order holding, "without any explanation," that the mother was prohibited from taking the child abroad. *Id.* at 952. The reasons for the rejection became clear in the trial court's opinion, in which the court explained that the mother had failed to prove that the custody order in place would have been afforded comity by the foreign country via the Hague Convention on the Civil Aspects of International Child Abduction treaty. *Id.* at 954. Neither party had presented any evidence on the record regarding this treaty. The trial court, on its own volition, had engaged in

internet research and learned that the country to which the mother sought to travel had violated that particular treaty no less than four times. *Id.*

The Superior Court found that the court's independent research and acquisition of information, and the subsequent decision based thereupon, was an abuse of discretion. *Id.* at 955. As an additional point, the court noted that, "[e]ven if we were to conclude that the court could take judicial notice" of the treaty information, Rule 201(e) of the Pennsylvania Rules of Evidence required notice and an opportunity to be heard on a court's intent to take judicial notice of that fact. *Id.* However, the lack of notice to the parties was not the driving factor in the Superior Court's decision, as it had already declared that the trial court had abused its discretion merely by relying upon evidence not of-record. The notice discussion was offered as additional support for the Superior Court's already-rendered decision.

Likewise, in *Ney*, a father sought a reduction in his child support obligations based upon a reduction in his income. *Ney*, 917 A.2d at 866. The father had presented evidence in support of his claim, as well as evidence that he was unable to find a higher-paying job. *Id.* at 868. Despite this evidence, the trial court performed its own internet research and apparently had found pertinent job openings. The trial court admitted that it had conducted its own research and questioned father about the openings that the court had found while the father was testifying. *Id.* at 867. Although the trial court advised the father about the information during the hearing, the Superior Court still found that the trial court's decision based upon its own research constituted an abuse of discretion. The parties had neither submitted that information to the court, nor moved it into the evidentiary record. Father's obvious notice to the existence of the information later relied upon by the trial court did not affect the Superior Court's ruling in any manner.

What is evident from these cases is that notice is not, as the OAJC suggests, dispositive of the question. To the contrary, notice was only used as supplemental support to the court's decision in *M.P.* A party's knowledge that extra-record evidence or information exists, or even knowledge that the trial court would base its decision on such evidence, is not a litmus test for whether a party can establish an abuse of discretion. Pennsylvania law, as I understand it, is clear.[1] Either the evidence is of-record or it is not. If it is not, any decision based upon that information constitutes a clear abuse of discretion, and, as an appellate court, we may not uphold such a decision. *Eck*, 475 A.2d at 827.

Notice was not a prominent feature in any of these cases, and is not in my view a fair distinguishing feature. Nor is the fact that neither *Eck* nor *M.P.* involved a modification of an order pursuant to Section 5505, as the OAJC indicates. *See* OAJC at 10. At issue is the general principle that an appellate court cannot uphold a decision that was based upon facts not of-record. That well-established premise is not specific to any statute, nor is it otherwise limited by subject matter. It applies to any claim that comes before an appellate court. This one is not exempt merely because it is a criminal case instead of a domestic relations case.[2]

---

[1]    As is evident throughout this opinion, the body of relevant cases is comprised primarily of Superior Court cases, which are not binding on this Court. *See In re Estate of duPont*, 2 A.3d 516, 524 (Pa. 2010). Nonetheless, because there are no cases from this Court of which I am aware that conflict with those Superior Court decisions, and because those cases are consistent with our other rules governing appellate law and procedure, I consider that body of Superior Court precedent to be an accurate representation of Pennsylvania law.

[2]    If the subject matter were a distinguishing feature as the OAJC suggests, then its own analysis necessarily fails as well. This is because the only discussion of notice appears in *M.P.*, and the requirement for notice specifically arose from the Rules of Evidence in the area of judicial notice. Thus, if bound to subject matter as the OAJC would have it, the notice discussion would have no impact here because this case has

Nor can it be said that Hoover, as the non-moving party, had any burden to ensure that the hearing was transcribed. He only incurred a burden after he received an adverse ruling and then filed an appeal. His duty at that point only is to ensure that the record, as was constructed in the court below, is complete, because anything not in that record does not exist for appellate purposes. *See* Pa.R.A.P. 1921 Note (citing *Commonwealth v. Williams*, 715 A.2d 1101, 1106 (Pa. 1998)). An appellant has a duty to order all transcripts of proceedings that will facilitate appellate review. Pa.R.A.P. 1911. However, a non-moving party has no obligation to ensure that the hearing is transcribed in the first place. Hoover could only produce for the Superior Court and this Court that which was created by the moving party (or, as can occur in Section 5505 cases, created by the trial court *sua sponte*).

Hoover, as appellant, can only forward to appellate courts that which exists. In this case, he did so. As the OAJC highlights, "[f]or reason unknown, the hearing was not conducted on the record." OAJC at 3. For this reason, there was no transcript for Hoover to order, and there is no evidence of-record that supports the trial court's decision to revoke its earlier order terminating Hoover's intermediate punishment. Nor does it matter that the reason for the trial court's revocation—a DUI arrest—was obvious or known to everyone. *Cf. Jones v. Ott*, 191 A.3d 782 (Pa. 2018) (finding a request for a jury charge waived even though moving party filed a written point for charge and ultimately did not receive the instruction, because the charging conference with the trial court was not transcribed). All that matters is that the certified record before the court contains no evidentiary support for the trial court's decision. Consequently, I am unable to uphold the trial court's order, as it was a clear abuse of discretion.

---

nothing to do with a court taking judicial notice. As noted, however, subject matter is not a distinguishing feature in this particular analysis.

Unlike the OAJC, which excuses the absence of an evidentiary record by relying upon its newly-created notice rule, Justice Donohue would find that there exists evidence in the certified record that would support the trial court's rescission order.

It is necessary to once more repeat what happened in this case. The trial court held a hearing. At that hearing, I assume that there was evidence, testimony, stipulations, arguments, or any combination of these typical forms of record builders. Based upon that hearing, the trial court rescinded its earlier order releasing Hoover from intermediate punishment. For whatever reason, and not because of anything Hoover did or did not do, the hearing was not transcribed. Nonetheless, the trial court's decision was predicated upon what happened at that hearing. There now exists no way for this Court, or any appellate court, to perform our traditional function, which is to review the record and ensure that the trial court's decision was not an abuse of discretion.

Justice Donohue sidesteps this traditional analysis by relying upon two items that appear on the docket in this case. First, she notes that the critical fact that has been alleged against Hoover, that he was arrested for another DUI, appears in an order issued by another judge. Judge Lovecchio originally sentenced Hoover to the term of intermediate punishment. However, for reasons unknown and presently immaterial, Hoover's petition to be released from the sentence was assigned to a different judge. When Judge Lovecchio was asked to revoke the trial court's release order, Judge Lovecchio issued an order explaining that he was unable to do so as that order was issued by a different judge. In so explaining, he mentioned Hoover's alleged DUI.

This hardly creates an evidentiary record that we can review for the present purposes. To put it differently, Justice Donohue would find an evidentiary basis for one trial court's decision because *another judge* mentioned an alleged fact while explaining why that judge could *not* address the merits of the petition that the other judge ultimately

resolved after holding a hearing. I have found no cases in which this Court has authorized such an expansive definition of what constitutes support for one trial court's decision. The argument might have some merit if the ruling trial judge did not conduct a hearing. But that is not what happened here. There was a hearing, there was a ruling, and there was no excuse for not transcribing the hearing. We do not typically allow parties to skate by our rules so easily, and we should not do so here. *See Jones v. Ott*, supra.

Second, Justice Donohue finds record support for the trial court's ruling because the trial court mentioned Judge Lovecchio's order (again, not the order that disposed of the petition, but instead an order explaining why he could not make the decision that is now before us on appeal) in her Pa.R.A.P. 1925(a) opinion. This basis for excusing the lack of an evidentiary record is even less compelling than the first. A Rule 1925(a) opinion is an opportunity for a trial court to explain why it decided the way it did, and to identify the information from the record created by the parties upon which the court relied in making that decision. The opinion is based upon the record; however, the opinion itself is not the record. To allow such supplementation and substitution would excuse the need to create a record in the first instance.

In my view, this is a straightforward appellate exercise. We must review a trial court's decision for an abuse of discretion. The hearing upon which the exercise of discretion was based in this case is nowhere to be found in the record, and no amount of notice renders the absence Hoover's fault. That should end the matter, as it always has in Pennsylvania appellate law. We should not go searching for evidence in the various entries in the docket in order to try to remedy the gap in the record, especially when we know there was a hearing and that the ruling trial judge relied upon it.

In a footnote responsive to this concurring opinion, the learned OAJC now asserts that, although it is the OAJC itself that has discussed (and rejected) the issue of abuse of

discretion, this case does not even contain such an issue. See OAJC at 16-17 n.7 (maintaining that the issue in this case is whether the trial court has the authority to act at all, "not its abuse of that authority"). The OAJC's insistence that the abuse of discretion question is not at issue in this case is, to say the least, confounding. The OAJC simultaneously resolves the question, then in a footnote asserts that the issue is not part of the case, and then, in the same footnote, defends its analysis of the question it says is not in the case. I disagree, because, as the OAJC's own opinion makes plain, the issue presented is (at least) two-fold: whether the trial court's revocation of its termination order was permitted by the authority vested in the court by Section 5505 and, if so, whether the trial court's decision to invoke that authority, or the manner in which it did so, was an abuse of the discretion afforded by the statute. The OAJC answers both questions, and so do I. That we reach opposing results on the latter question makes it no less a part of this case.

In the body of the opinion, the OAJC excuses the fact that the trial court neglected to hold a hearing on the record by blaming Hoover, the non-moving party, because he apparently had notice of the fact that drove the trial court's decision. In footnote 7, the OAJC once more maintains that *M.P.* and *Eck* support such a result. However, as outlined above, neither case stands for that proposition. The consequence of erroneously extrapolating such a rule is clear, and the resulting difficulty is evident. Because those cases do not stand for what the OAJC says they stand for, Hoover at the time could not have known that it somehow became his burden to force the moving party and the trial court to install a court reporter and direct that reporter to transcribe the hearing. The cases clearly and more naturally are read for the proposition that Hoover cites: that a decision based upon evidence not of record cannot be upheld by an appellate court. This is just such a case. But the OAJC turns those cases on their head, such that Hoover now

loses his meritorious claim, and learns (along with all of us) that Hoover's putative notice of the operative fact shifted the burden to him. This has never been our law.

There is considerable danger in going forward with such a rule. The debate will now center on whether a defendant had notice of a fact that is not entered into the record by the moving party. If an appellate court finds that the defendant did have such notice, then a decision based thereupon can be upheld, despite clear language to the contrary in *Eck*. The problem, though, is that notice does not create a record to review. When the appellate court reviews the record to assess the trial court's decision, there is still nothing to review. And because notice of the fact apparently shifted the burden, the challenger, regardless of the quality of the argument, necessarily loses. This effectively creates a burden-shifting scheme that spawns a new form of waiver. This is the consequence of the OAJC's decision. The OAJC insists that this case is only about authority. But in rejecting the abuse of discretion claim in the manner that it does, the OAJC manufactures a new rule that lower courts will follow, a rule that will work to the detriment of many good faith litigants.

The OAJC concludes footnote 7 by stating that none of this matters because this case is decided upon notice in the due process context, and not upon notice for record-creation purposes. The OAJC misses the point. By deciding the abuse of discretion question (incorrectly) along the way to its due process analysis, the OAJC creates a new, unfortunate rule. Both notice issues are important questions of law, but they are not questions that we should address when we are not compelled to do so. *See In re Fiori*, 673 A.2d 905, 909 (Pa. 1996) (explaining that courts should "adhere to the sound tenet of jurisprudence that courts should avoid constitutional issues when the issue at hand may be decided upon other grounds.") (citation omitted). By maintaining that the due

process claim renders the prior discussion of notice irrelevant, the OAJC gets things backwards.

As I would avoid the more complicated constitutional question in this case, I concur in the result reached by the OAJC. That said, however, I fully agree with the OAJC's well-reasoned due process analysis. That analysis not only is correct, but also will ensure that Section 5505 will not be used in a manner that exceeds its intent, and further will ensure that trial courts afford defendants notice as to what conduct would constitute violations of court orders.