J-A27035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DEVIN REESE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MEGAN HUGHES | : | No. 836 MDA 2022 |

Appeal from the Order Entered May 4, 2022
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
202102848

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED DECEMBER 27, 2022**

Devin Reese ("Father") appeals from the order entered by the Court of Common Pleas of Luzerne County Civil Division ("trial court"), granting the Petition for Special Relief filed by Megan Hughes ("Mother") on April 12, 2022. Mother's petition alleged that Father, who had legal and physical custody of the parties' minor child ("Child"), born in January 2021, had prevented all contact between Mother and Child since January 29, 2022.   Following a hearing held on May 3, 2022, at which both Mother, Father, and a caseworker from the Luzerne County Office of Children and Youth ("OCY") testified, the trial court ordered that the parties comply with a previous, April 13, 2021 custody order, in which the parties had been granted shared physical and legal custody.   After careful review, we hold that the trial court erred by not

_____

[*] Retired Senior Judge assigned to the Superior Court.

addressing all of the child custody factors as required by Section 5328(a) of the Child Custody Act, 23 Pa. C.S. § 5328(a).[1]  We therefore remand for proceedings consistent with this Memorandum.

_____

[1] Section 5328(a) of the Child Custody Act states:

> In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
> (3) The parental duties performed by each party on behalf of the child.
> (4) The need for stability and continuity in the child's education, family life and community life.
> (5) The availability of extended family.
> (6) The child's sibling relationships.
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
> (11) The proximity of the residences of the parties.

*(Footnote Continued Next Page)*

The protracted factual and procedural history underlying this appeal can be gleaned from the record as well as the opinion of the trial court. *See* N.T., 5/4/22 ("N.T."); Trial Court Opinion, 6/29/22. Mother and Father have maintained an off-and-on intimate relationship since Mother became pregnant with Child. At the time of Child's birth, in January 2021, Mother had obtained a protection from abuse ("PFA") order against Father; however, approximately a month following Child's birth, and up until March 2021, Child lived with Mother, and Father "was at the house all the time up until March 17th." N.T. at 25. Although the trial court did not allude specifically to a March 2021 petition for special relief in its opinion, the certified record includes a March 17, 2021 order issued in response to Father's March 17, 2021 "Emergency Petition for Special Relief in Custody" that granted Father's petition and directs "[p]ending further order of the court, Father [] is awarded primary physical

---

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.
(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
(14) The history of drug or alcohol abuse of a party or member of a party's household.
(15) The mental and physical condition of a party or member of a party's household.
(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

custody of [Child] with periods of supervised custody awarded to [Mother], to be supervised by Father or another agreed upon supervisor for a minimum of 16 hours per week." Order, 3/17/21.

Following a conciliation conference held on March 31, 2021, the parties reached an agreement which was reflected in the trial court's April 13, 2021 order providing for shared legal and physical custody.[2] After a physical altercation between Mother and Father in April 2021, Father obtained PFA orders in May, 2021, which, *inter alia*, excluded Mother from Father's residence, but maintained the existing custody order. Temporary PFA Order, 5/6/21; Final PFA Order, 5/7/21. Also in May 2021, Father filed a second Emergency Petition for Special Relief in Custody and on June 11, 2021, OCY filed a dependency petition alleging that:

> [OCY] received a report regarding a physical assault between [Mother] and [Father]. [Mother] punched [Father] while he was holding [Child]. There was [a PFA order] granted on behalf of [Father] against [Mother]. There are charges pending for [Mother]. The caseworker has made attempts to visit [Father] in his home to see [Child] and assess safety. [Father] has been resistant to allow the worker into his home. [Father] reports he will bring [Child] into the agency for visits for the caseworker to see [Child]. In November 2020, [Father] was arrested by the Kingston Police stemming from a domestic violence incident, and eventually pleaded guilty to lesser charges, and also has pending

---

[2] Pursuant to this order, Father had custody of Child from pick-up time at daycare on Mondays until morning drop-off on Wednesdays and on alternate weekends; Mother had custody of Child from pick-up time at daycare on Wednesdays until Friday at morning drop-off and on alternate weekends. Both Mother and Father were required to permit unmonitored, reasonable phone calls between the absent parent and Child at all times. Order, 4/13/21, at 4, 7.

retail theft charges. [OCY] believes and therefore avers that [Child] is in need of protection and the family is in need of services.

Dependency Petition, 6/11/21, at 6.

Following a hearing on August 12, 2021, OCY's dependency petition was dismissed after Mother waived her hearing rights and stipulated, without admission of wrong-doing, that the allegations set forth therein could lead to a finding of dependency; by that Order of Adjudication and Disposition, legal and physical custody was altered, now providing Father with sole legal and physical custody.[3] Order of Adjudication and Disposition, 8/12/21.

Father testified that the following month, in September of 2021, he began to allow Mother to see Child on a regular basis, and the parties agreed, in a notarized document, to work towards a shared custody arrangement. N.T. at 10-11. Mother testified that beginning in September of 2021, she saw Child for a couple of hours each day, and that they progressed to overnight visits. *Id*. at 28. She stated that she and Father were "pretty much together" for all of October, but in November they had a disagreement, although Father

---

[3] The Order of Adjudication and Disposition states, in relevant part:

> Disposition
> Custody/Placement
> Legal Custody of the Child shall remain with Father.
> Physical Custody of the Child shall remain with Father.
> - - -
> Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the Child.

Order of Adjudication and Disposition.

continued to permit her to spend time with Child. *Id*. Mother testified that the last time she saw Child was January 29, 2022, just prior to a scheduled surgery, when she and Father had an argument. *Id.* at 29. She stated that about three weeks after her surgery, when she was cleared by her doctor to safely lift Child, she asked to see Child and Father informed her that he was looking to have her parental rights terminated. *Id*. at 30-31.

On February 8, 2022, Mother filed a Petition to Modify a Custody Order, requesting that the Order of Adjudication and Disposition granting Father sole physical and legal custody be modified to return the parties to shared legal and physical custody pursuant to the April 13, 2021 order; that petition went to conciliation conference on April 1, 2022, and the parties failed to reach an agreement. The matter was scheduled for the Call of the Custody trial list on May 25, 2022 and was also scheduled for trial on July 26, 2022.

On April 12, 2022 Mother filed the instant Petition for Special Relief.[4] Following the May 3, 2022 hearing, the trial court issued the order at issue in this appeal,[5] directing that the parties immediately comply with the April 13,

_____

[4] Before the trial court, and in response to a question from her counsel, Mother stated that she was requesting that the court grant her visitation with Child every weekend, with the ability to pick him up at daycare on Friday and drop him off there on Monday so that she would avoid contact with Father. N.T. at 37. Counsel asked Mother if she was requesting that the court set a schedule pending a custody trial permitting her contact with Child and she responded, "yes." *Id*. at 36.

[5] The trial court's order cancelled the call of the custody trial list scheduled for May 25, 2022, cancelled the custody trial scheduled for July 26, 2022, and
*(Footnote Continued Next Page)*

2021 custody order granting the parties shared physical and legal custody, and this appeal followed.[6]

In his brief, Father presents the following questions for our review:

1.   Did the trial court abuse its discretion or commit an error of law in its May 4, 2022 Order in that it denies the Appellant/Father sole primary physical custody of his minor child?

2.   Did the trial court abuse its discretion or commit an error of law in its May 4, 2022 Order in that it removes the Appellant's sole primary physical custody of the minor child and instead awards, grants and orders both parties to have shared legal and share physical custody of their minor child?

3.   Did the trial court abuse its discretion or commit an error of law, based upon the testimony of record below, in limiting the Appellant/Father's physical custody of the minor child without any evidence or testimony that the Appellant's time with his minor child should be restricted or diminished?

4.   Did the trial court abuse its discretion or commit an error of law, based upon the testimony of record below, in failing to follow the mandates of 23 Pa.C.S. § 5328(10) that the Court must consider which party is more likely to attend to the daily physical, emotional, developmental and special needs of the child?

5.   Did the trial court abuse its discretion or commit an error of law, in failing to give appropriate weight to the testimony of the Appellant, Devin Reese, as to his concerns for the safety of his minor child while in the physical custody of the Appellee/Mother?

directed that all future petitions for special relief, emergency motions and protection from abuse orders be heard before the Judge who issued the order. Order, 5/4/22.

[6] Father filed his notice of appeal and concise statement of errors complained of on appeal on June 3, 2022 and the trial court issued its 1925(a) opinion on June 29, 2022.

6.    Were the trial court's conclusions unreasonable as shown by the evidence of record?

7.    Did the trial court abuse its discretion or commit an error of law by failing to enter a custody order that is in the best interest of the minor child?

Father's Brief at 4-5 (suggested responses omitted).

We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. *M.P. v. M.P.*, 54 A.3d 950, 953 (Pa. Super. 2012). Because we cannot make factual determinations, we must accept the findings of the trial court that are supported by the evidence. *Id*. We defer to the trial judge regarding credibility and the weight of the evidence. *Id*. The trial judge's deductions or inferences from its factual findings do not bind this court, however we may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings. *Id*. The parties may not dictate the weight the trial court places on evidence; we defer to the findings of the court, which has had the opportunity to observe the proceedings and demeanor the witnesses. The paramount concern of the trial court is the best interest of the child. *R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa Super. 2009).

The trial court summarized the relevant testimony by the parties at the hearing:

Father admitted that he did not permit Mother to see or contact [Child] since January 29, 2022. He stated that she texted him every single day requesting that she be allowed to see [Child]. He further testified that he knew Mother had completed the services requested by [OCY]. He further testified that he filed a petition to

terminate her parental rights because she had no contact with [Child] for a month.

On the other hand, Mother testified credibly that she had surgery scheduled for February 10, 2022 and she would not be able to lift over ten pounds. Mother had informed [F]ather of this surgery and her post-operative restrictions. When she asked to see [Child] on February 23, 2022, Father told her he "was looking to terminate her parental rights."

Mother testified that she sent Father a text message as follows; "Hey, just wanted to let you know I dropped off [Child]'s Easter basket and a toy for him. It's in front of your door. Give him kisses for me and tell me (sic) mommy and sissy miss him so much. Would be nice to see him or at least hear his voice. This Court notes: Father's response? Unanswered.

Although Father's reason for not allowing [Child]'s Mother to have any contact with [Child] was because of Mother's mental condition he provided no evidence to support that contention. Mother credibly testified that she has been treating with a psychiatrist and has been taking medication for her mental conditions on a regular basis. She also has been continuing with counseling, as well.

The parties stipulated that the dependency action as it relates to Mother has been closed and Mother has been compliant and completed all requested services.

Trial Court Opinion, 6/29/22, at 2-3 (citations to notes of testimony omitted).

Father argues, generally, that the trial court failed to give appropriate weight to his testimony regarding Mother's past history of mental illness and substance abuse; he contends that the court ignored his testimony regarding his stability and suitability to serve as primary caretaker and in so doing, failed to consider Child's best interests. He states that the trial court's conclusions are unreasonable as demonstrated by the evidence of record. Father's Brief at 10-12, 21.

In its opinion, the trial court provides no discussion of the Section 5328(a) best interest factors; rather, it invokes Pa.R.C.P. 1915.13, which states:

**Rule 1915.13 Special Relief**

At any time after commencement of the [custody] action, the court may on application or its own motion grant appropriate interim relief or special relief. The relief may include, but is not limited to, the award of temporary legal or physical custody…

Pa.R.C.P. 1915.13. The trial court opined that there was no reason for Father to prohibit contact and partial physical custody of Child by Mother, noting that Mother has primary custody of her other child, a six-year old daughter from another relationship, and that OCY did not indicate that increased custody for Mother would result in their need to be involved. Trial Court Opinion, 6/29/22, at 7. The trial court further noted that Father did not argue at the hearing that the order in the dependency matter prevented a change in Father's custody. *Id*. at 7, n.1.

Here, Mother initiated proceedings before the trial court by filing a petition for special relief, in which she averred that she had filed a petition to modify the current custody order in so far as returning the parties to the April 13, 2021 order granting shared custody, but was requesting a hearing so that she could be provided with interim contact with Child pending the scheduled May 25, 2022 custody trial. The May 4, 2022 order, however, did not provide for interim contact but rather directed the parties to comply with the custody

order of April 13, 2021, effectively granting Mother and Father shared physical and legal custody, and cancelled the scheduled custody trial.

When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant Section 5328(a) factors. *E.D. v. M.P.*, 33 A.3d 73, 80 (Pa. Super. 2011). "**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Conversely, this court has determined that where a court has not made an award of custody, but merely modified a discrete custody-related issue, such as a father's summer employment schedule during the portion of the time children were with him, and has not changed the underlying award of custody, it is not bound to address the sixteen statutory factors in determining a child's best interest. *See M.O. v. J.T.R.*, 85 A.3d 1058 (Pa. Super. 2014). That is not the case here. The trial court's May 4, 2022 determination, albeit styled as "Special Relief," to revert back to the April 13, 2021 custody order effectively changed what had been sole custody of Father to shared physical and legal custody, and therefor constituted a significant alteration of the existing custody order; we find therefore that the trial court erred in failing to address the sixteen statutorily enumerated factors to be considered in determining a child's best interest when awarding custody. Accordingly, we are constrained to remand to the trial court for the preparation of an opinion and order specifically addressing all of the factors under 23 Pa.C.S. § 5328(a) on the issue of

physical and legal custody.  The trial court must issue its opinion and order within 30 days of the date on which the certified record is returned.  Our decision here does not preclude the trial court from leaving the May 4, 2022 order in effect as a temporary award of special relief, pending its issuance of said new opinion and order.

Case remanded with instructions.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2022