2022 PA Super 135

| | | |
|---|---|---|
| BRADLEY A. SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DUSTIN M. SMITH | : | No. 1220 WDA 2021 |

Appeal from the Order Entered September 16, 2021
In the Court of Common Pleas of Fayette County Civil Division at No(s):
1169 of 2016 GD

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

OPINION  BY LAZARUS, J.:                    **FILED: AUGUST 9, 2022**

Bradley A. Smith (Father) appeals from the order, entered in the Court of Common Pleas of Fayette County, granting Dustin M. Paxon's (Mother) petition for primary physical custody of the parties' child, E.M.S. (Child) (born May 2008).   After our review, we affirm the trial court's order.

The parties met while serving in the United States Army.  They married in 1996, resided in Arizona, where Child was born, and then moved to Fayette County, Pennsylvania in 2012.  They separated in 2015.  Thereafter, Father returned to his hometown of White Bear Lake, Minnesota.  Pursuant to a July 14, 2016 order, the Honorable Steve P. Leskinen granted the parties shared legal custody of Child, granted Mother primary physical custody of Child, and granted Father partial physical custody of Child.  One month later, on August 11, 2016, the parties entered into a custody consent order.  That order provided, in relevant part:

[T]he parties shall share **LEGAL** custody (authority to make major decisions regarding educational, religious, medical[,] and other important matters), as defined by the law of the Commonwealth of Pennsylvania, and shall share **PHYSICAL CUSTODY** of their minor child, [E.M.S.] [] as follows:

[] Mother [] shall exercise **PRIMARY** physical custody. It is noted that the Father is residing in the State of Minnesota, but that the parties have agreed to a physical and legal custody arrangement and that this is[,] therefore[,] not a relocation case, within the meaning of the law.

[] Father [] shall exercise PARTIAL physical custody, as follows:

- During the school year, if the Father is present in Fayette County, Pennsylvania, and has given at least one week's notice to the Mother, the Father shall be entitled to exercise physical custody for one weekend per month, such weekend to begin at 6:00 P.M. on Friday until 6:00 P.M. on Sunday, or at such other times as the parties agree;

- During the summer months when school is not in session, the Father shall be entitled to exclusive custody for three non-consecutive weeks, to be exercised upon at least thirty (30) days' advance notice to [M]other, with one week to be exercised in the month of June, one week to be exercised in the [month] of July, and one week to be exercise in the month of August; and unless the parties otherwise agree, the "week" of exclusive custody shall begin and end on Saturday at 6:00 P.M.; and the parties may modify the custody arrangement by mutual agreement; and

- At such other times as the parties may agree.

Consent Order, 8/11/16 (emphasis in original).

On April 21, 2017, Father filed a petition for contempt against Mother for failing to comply with the consent order. Following a hearing, the trial court entered an order finding Mother in contempt for failing to comply with

the consent order's provision regarding communication via Family Wizard.[1] **See** Order, 5/30/17. On June 6, 2017, Father filed a petition for special relief, averring Mother's paramour, Vincent Angelo, with whom Mother and Child resided for about a year, was a fugitive from justice and had abused drugs, and that Mother had accused Angelo of domestic violence against her while Child was living with Mother and Angelo. Father sought relief in the form of continued physical custody of Child pending court-ordered drug screening for Angelo and further order of court. On June 8, 2017, Judge Leskinen entered an order directing Child remain in Father's custody pending full information "concerning the domestic violence incident between Vincent Angelo and [Mother] of May 27, 2017." **See** Order, 6/8/17.

On July 20, 2017, Mother filed a petition for return of custody. In her petition, she acknowledged the domestic incident, averring that she and Angelo argued, he became physically aggressive with her, and she called local police. Angelo was charged with simple assault and harassment. Mother also averred that she left Angelo's residence after the incident and obtained a new residence in which Child has her own bedroom.

---

[1] https://www.ourfamilywizard.com (last visited 7/25/22).

On August 22, 2017, the court held a hearing on Mother's petition.[2] Both parties testified, as well as the parties' two adult sons, Child, and Father's girlfriend, Amy McElmury (Amy), who owns the house in which she, Father, and Child reside. Child expressed her preference was to remain in Minnesota

_____

[2] Mother testified that she told the responding officer that Angelo had returned home from allegedly doing drugs at a house in Uniontown and had a "crazy look in his eye." N.T. Hearing, 8/22/17, at 42. She testified further:

> Q: Did you tell Trooper Miller that [Angelo] had been doing drugs that night?
>
> A: I said I accused him of doing drugs.
>
> Q: [] And, it states here that the defendant grabbed [] her by the hair, pulled her out of an upstairs bedroom and down a flight of stairs. The victim related that the defendant then pulled her by her hair through a kitchen and was throwing her around causing her to hit her head on the refrigerator door. The victim related additionally the defendant is pulling her hair and caused it to be ripped from her head and showed a collection of blond hair to myself and Trooper Gordon. Did you in fact show a clump of your hair that he had ripped out to the trooper?
>
> A: I showed them some hair, yes, sir.

*Id.* at 44. Mother also testified that Angelo's case was dismissed because she refused to testify. *Id.* at 15-16. Additionally, Mother testified that Angelo is incarcerated in Virginia for failure to report to his probation officer as a result of a grand larceny conviction in 2007. *Id.* at 16-17, 66. Mother acknowledged that Child was in the home on the date of the domestic violence incident. *Id.* at 56, 58. Notably, when asked if Mother would resume her relationship with Angelo if he were released, Mother responded, "Potentially." *Id.* at 18. She stated that in order to resume the relationship, Angelo would be required to attend anger management classes and engage in couples counseling with her. *Id.* Mother also acknowledged that one week after the domestic violence incident, Angelo was at the house during a custody exchange. *Id.* at 54.

with Father. Following the hearing, the court denied Mother's petition for return of custody.[3] **See** Order, 8/24/17.

On November 8, 2017, Mother filed a petition for modification of custody, seeking physical custody of Child during her Christmas vacation. On December 8, 2017, the parties entered into a consent order granting Mother physical custody of Child from December 26, 2017 until January 1, 2018. **See** Order, 12/8/17. On December 29, 2017, the parties entered into a temporary modified custody consent order "in order to stabilize custody and to afford the parties an opportunity to attempt an amicable long-term resolution." Order, 12/29/17. That order continued shared legal custody between the parties, and, pending further order, continued primary physical custody with Father and partial physical custody with Mother including, *inter alia*, exclusive custody during Child's summer vacation. **See** Temporary Modified Custody Consent Order, 12/29/17. The order also provided that either party may file a motion for a custody trial on the issue of primary physical custody. **Id.**

_____

[3] At that hearing, Father, Child's adult brothers (who testified on behalf of Mother), as well as Child herself, expressed concern about Angelo. **See** N.T. 8/22/17, at 104-06 (Child testified: "I heard [Angelo] drag my mom down the stairs. . . . Like thumps going downstairs [and] I heard her fall and scream." Child testified she was "[m]ad [t]hat [Angelo] was hurting my mom [and sad] because I heard her scream."); *id.* at 84 (Child's adult brother testified: Q: "Would you feel comfortable with your sister being in a house with a man who could have dragged your mother down the stairs by her hair and slammed her head against the refrigerator and the floor?" A: "No."); *id.* at 136 (Father testifying to his concerns if Angelo were to come back to house with Child present).

On February 22, 2018, Mother filed a motion for a custody trial, and on April 16, 2018, Mother filed a petition for contempt, alleging Father was not complying with the temporary consent order. The parties agreed to have the court hear both matters on July 6, 2018.

At the July 6, 2018 trial/custody hearing, Mother testified that she had ended her relationship with Angelo and there was "no possibility of any reconciliation with him." N.T. Trial/Hearing, 7/6/18, at 11-12. Father, Amy and one of Child's adult brothers also testified. Additionally, the court interviewed Child *in camera*.

On August 21, 2018, the court entered an order continuing shared legal custody between the parties, granting Father primary physical custody of Child during the school year, and granting Mother partial physical custody of Child, including, *inter alia*, exclusive custody during Child's summer vacation. Mother appealed that order, and this Court affirmed. ***B.S. v. D.M.S.***, 1340 WDA 2018 (Pa. Super. filed June 11, 2019) (unpublished memorandum decision) (concluding no abuse of discretion where trial court considered all relevant factors in making its determination that it was in Child's best interest to continue primary physical custody with Father and for Child to continue her schooling in Minnesota; Child was well-adjusted, was doing well in school, was engaged in several recreational activities, had friends in her neighborhood, and Father's fiancé worked from home and was available for Child when Father was at work).

Since this Court's prior decision, there have been several significant changes in circumstances. On November 9, 2020, Mother filed a petition for modification and custody mediation. In December of 2020, Father, Amy, and Child moved from Minnesota to Florida. On December 11, 2020, the court appointed Patrick McDaniel, Esquire, as guardian *ad litem* (GAL) for Child, and, on February 19, 2021, the court appointed Robert Harper, Esquire, to represent Child. On May 12, 2021, noting Attorney McDaniel's conflict that prevented him from serving as GAL, substituted Attorney Harper as GAL. The court scheduled a custody trial, which was held August 27, 2021.

At trial, Child, now thirteen years old, testified that her preference had changed, and she wished to "stay with [her] mom." N.T. Custody Trial, 8/27/21, at 16. She stated: "So, basically, I just kind of want to switch it, like see [Father] on certain holidays and during the summer." *Id.* According to Child's testimony, prior to moving to Florida, Father and Amy argued. Father and Child left the house, lived in a hotel for a week, and ultimately moved back in with Amy. *Id.* at 19-20. Child testified that the trip to Florida was presented to her as a vacation. *Id.* at 23-24. Child also testified that her relationship with Amy had deteriorated, *id.* at 13-15, 21-22, and that when she was with Mother she was able to spend time with her brothers, who live ten minutes from Mother, and with her maternal grandparents. *Id.* at 28-32.

Mother testified that she had moved to a new residence in Meritstown, Pennsylvania. She resided in a large home that houses the town's post office

on the first floor and a residential second floor with four bedrooms. Mother is the official in charge of the Meritstown post office, so she essentially works from home (Monday through Friday 8 a.m. until noon, and Saturday 8 a.m. until 11:30 a.m.). *Id.* at 46-47. Child's maternal grandparents and brothers live close to Mother, and, when Child is in Meritstown, she has frequent visits with them. *Id.* at 58. Mother also testified that her relationship with Angelo has been over for years. *Id.* at 47.

With respect to his move to Florida, Father testified as follows:

Q: As opposed to moving to Florida, was there any specific reason you didn't move closer to Southwestern Pennsylvania where [Child's] family resides?

A: There are a lot of specific reasons I didn't move to Southwest Pennsylvania, yes.

Q: What are those?

A: It has never been an option in [mine and Amy's] relationship. . . . I don't believe [the] education system is as good here. I don't believe the security is as good here. I mean it was just not a consideration.

Q: **Do you think it would benefit [Child] to spend more time with her mother and her grandparents and brothers?**

A: **Yes.**

\* \* \*

Q: Why did you move to Florida?

A: Many reasons. We love it there, that area. We have traveled there a bunch of times. [Amy's] family is all slowly migrating down there, purchasing homes there, getting jobs there. I do not like the cold weather. We had a great opportunity now that my employer offered to allow me to take another position and maintain my employment. You know, everything is cheaper.

> The kids could go to school whereas [Child] had not been in school for the past year. I mean, you watch the news, you see the rest of it, Florida is great.

*Id.* at 78, 84. Father did acknowledge that Child's relationship with Amy was currently "strained." *Id.* at 84. Amy also testified, and she acknowledged that there had been some "issues" between her and Child. *Id.* at 94.

At the conclusion of the trial, the GAL recommended that custody remain with Father and that the court maintain the status quo. *Id.* at 103-04. He also recommended coparenting and family counseling sessions. *Id.* at 104.

On September 16, 2021, the court entered the following order, giving Mother primary physical custody of Child:

> AND NOW, this 16th day of September 20201, after a *de novo* trial and consideration of the factors set forth at 23 Pa.C.S.A. § 5328 as more fully discussed on the record, it is hereby ORDERED and DIRECTED . . .
>
> The parties shall share physical custody as follows: [Father] shall have physical custody each year beginning one week after school ends in the spring and ending one week before school starts in the fall[.]
>
> At all other times, except as otherwise set forth herein or agreed upon by the parties, custody shall be with [Mother].

Order, 9/16/21.

Father filed this timely appeal. Father and the trial court have complied with Pa.R.A.P. 1925.

Father raises the following issues for our review:

1. Whether the trial court abused its discretion in awarding primary custody to [Mother] in Pennsylvania and removed [Child] from [Father] in Florida, because the testimony and

evidence at trial establishes that the order, dated September 16, 2021, was not in the best interests of [Child]?

2. Whether the trial court abused its discretion in awarding primary custody to [Mother] in Pennsylvania, and removing [Child] from [Father] in Florida, when there was clear evidence that [Mother] was held in contempt[4] for failing to return [Child] to Florida during the pendency of [the] custody trial, and there was clear and convincing evidence that [Mother] turned [Child] against [Father]?

3. Whether the trial court abused its discretion by disregarding the recommendation of Child's [GAL], who had recommended no change in primary custody?[5]

4. Whether the trial court erred in entering its order, dated September 16, 2021, when it failed to address all sixteen (16) custody factors pursuant to 23 Pa.C.S. § 5328?

Appellant's Brief, at 4 (footnote 4 in original text, footnote 5 added).

We begin with our scope and standard of review: We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. *M.P. v. M.P.*, 54 A.3d 950, 953 (Pa. Super. 2012). Because we cannot make independent factual determinations, we must accept the trial court's finding that are supported by the evidence. *Id.* The trial

---

[4] The record indicates that [Mother] was not formally held in contempt; she was, however, threatened with incarceration by the [t]rial [c]ourt for not returning [Child] to [Father], and was found to have been in "violation of the Custody Order." Appellant's Brief, at 4, n.1.

[5] In his pretrial recommendation and at the close of trial, the GAL recommended that the court maintain the *status quo* with primary (school-year) custody in Mother. *See* N.T. Custody Trial, 8/27/21, at 103-04. The GAL also filed a brief on appeal. Notably, as discussed *infra*, the GAL's brief on appeal argues the trial court's September 16, 2021 custody order, granting Mother primary school-year custody, serves the best interests of Child. *See* GAL Brief, at 7.

judge's deductions or inferences from its factual findings, however, do not bind this Court. *Id.* We may reject the trial court's conclusions, but only if they involve an error of law or are unreasonable in light of its factual findings. *Id. See also J.R.M. v. J.E.A.*, 33 A.3d 647 (Pa. Super. 2011); *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005); *Landis v. Landis*, 869 A.2d 1003, 1011 (Pa. Super. 2005).

When a trial court orders a form of custody, the best interest of the child is paramount. *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011). The trial court must consider the following factors when determining the child's best interest:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Moreover, on issues of credibility and weight of the evidence, we defer to the findings of the trial court, which has had the opportunity to observe the proceedings and demeanor of the witnesses. *R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009). The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

***Id.*** The test is whether the evidence of record supports the trial court's conclusions. ***Ketterer v. Seifert***, 902 A.2d 533, 539 (Pa. Super. 2006).

In his first issue, Father argues that the evidence at trial establishes that the court's order was not in Child's best interests. This claim is meritless.

Judge Leskinen, who has overseen this case since 2017, stated several times on the record that, but for the distance between the parties, this case would be one of 50/50 shared custody. Thus, presented with the circumstances before him, Judge Leskinen heard the evidence, weighed the relevant statutory factors–which now favor Mother–and made a decision that is in Child's best interest. The court stated:

> [T]he initial custody order[,] which went [Father's] way[,] was very much influenced by the very substantial testimony about [Amy's] extended family that was available in Minnesota, the family type of activities that were available in Minnesota, the specific home location[,] and the facilities nearby, so all of those factors were changed without advance notice. . . . Certainly, I accept your point that [Mother] didn't travel to Minnesota and hasn't traveled to Florida[.] So it is more of a forfeiture of some of the positives that the [c]ourt relied on in the original custody order than anything else. . . . **[T]he original reasons that [F]ather was awarded primary [physical custody during the school year], was []the positives that [Father's] home had offered, . . . [Amy's] extended family in Minnesota, the specific living situation in Minnesota that has now changed[,] and the details that we have about Florida are not nearly as impressive to me as the details of the housing in Minnesota.** . . . [I]n terms of stability and continuity, that would've been a major advantage for [Father] had he remained in Minnesota. [Child] would have [had] the same school, the same friends at school, the same community. That advantage has been forfeited. **[Mother] remains where she has always been so at this point, the advantage of stability and continuity [is] in [Mother's] favor.**

> Secondly, at the time that [Father] started with primary school-year custody, there was a serious domestic violence issue at [Mother's] household, which at this point, from the evidence I have, appears to have subsided. The absence of that negative, not necessarily a positive by itself, [] is a change of circumstances that favors [Mother].

N.T. Custody Trial, 8/27/21, at 106, 110-12 (emphasis added).

Father's claim in his brief, that there "was no indication that the decision was made in the best interest of the [C]hild," is belied by the record. As the court found, and as the evidence of record supports, Father's move to Florida, the strained relationship between Amy and Child, together with Mother's termination of her relationship with Angelo and her move to a home that houses her place of employment and is close to Child's brothers and maternal grandparents, have altered the playing field. The balance now weighs in favor of Mother. Additionally, and as we noted above, the GAL's brief on appeal, contrary to prior recommendations, now maintains that the trial court's September 16, 2021 custody order, granting Mother primary school-year custody, serves the best interests of Child. *See* GAL Brief, at 7, 10 (GAL stating move to Florida "was a unilateral undertaking by [Father] without any consideration for [Mother's] concerns, the best interest of [Child], or judicial review. However, . . . the trial court did not solely reverse the custody order on that factor alone. The **trial court clearly had credible evidence to support its decision that the best interest of [Child] was to award primary custody to [Mother]** in Fayette County, Pennsylvania.") (emphasis added). *See also supra* n.5. Further, contrary to Father's argument, the

- 14 -

record does not show that the order is "manifestly unreasonable." Appellant's Brief, at 14. After our review, we find that the evidence of the changed circumstances amply supports the court's determination that awarding Mother primary physical custody is in Child's best interest.[6] We find no error or abuse of discretion. *M.P.*, *supra*.

Next, Father argues the trial court abused its discretion in awarding Mother primary custody in Pennsylvania and removing Child from Florida, claiming there was "clear evidence that [Mother] was held in contempt for failing to return [Child] to Florida during the pendency of [the] custody trial,

_____

[6] Although our review of the record confirms the court's observation that Mother has made progress in the past four years, we note that at the August 22, 2017 hearing, Judge Leskinen addressed Mother as follows:

> The exhibits that you have presented, the exhibits that are attached to your petition indicate[] that at least from what I['ve] seen so far, you have not really complied with my order from July of 2016, which was to submerge the conflict, because your text messages attached to your own petition are extremely contentious and looking to keep the fight going instead of trying to calm things down. Even the response to the exhibits you and your counsel have presented indicate that you have a real anger issue going on, and you can't blame [Father] for what you say, and what you say in the text messages attached to your petition for return of [C]hild are just intended to keep a fight going. If you can't see that, then you need to read through them again.

N.T. Hearing, 8/22/17, at 34. At the July 6, 2018 custody trial, Mother acknowledged that the "arguing and name calling" between the parties is "counter-productive and it is hurting [Child]." N.T. Trial/Hearing, 7/6/18, at 65. We remind Mother that if she continues to "keep the fight going," she risks forfeiting primary physical custody. *See* 23 Pa.C.S.A. § 5338(a) ("Upon petition, a court may modify a custody order to serve the best interest of the child.").

and there was clear and convincing evidence that [Mother] turned [Child] against [Father.]" Appellant's Brief, at 4. This claim is also meritless. As Father acknowledges in a footnote to issue 2 in his Statement of Questions Involved, *see* Appellant's Brief, at 4, n.1., Mother was not held in contempt. Although there may have been a contempt allegation that was ultimately resolved, there is nothing in the docket entries or record before us to support a finding of contempt during the pendency of the custody trial. Furthermore, as the GAL highlights in his brief, "[Father] has violated the custody orders just as much as [Mother]." GAL Brief, at 7, 11. Neither party is without fault in this regard.

Additionally, we disagree with Father's claim that there is clear and convincing evidence that Mother attempted to turn Child against Father. It bears repeating–neither party is without fault. Over the last five years, both parties have at times impeded the other from exercising their rights under the various custody orders. Father cannot argue or expect an advantage when he has acted in the same manner as Mother.

In his third issue, Father argues the court abused its discretion when it awarded custody to Mother against the recommendation of the GAL. This claim lacks merit. The trial judge, in a non-jury trial, hears the evidence and decides the controversy. The court cannot delegate its power to a non-judicial officer, nor is it bound by the recommendation of the GAL. *See C.W. v. K.A.W.*, 774 A.2d 745 (Pa. Super. 2001). Further, as we have noted at length above, the GAL changed his recommendation. We presume, after reading the

- 16 -

testimony and upon further reflection on the changed circumstances, the GAL realized that Child's best interests would be served by awarding primary custody to Mother. Accordingly, we afford Father no relief on this claim.

Finally, Father argues the trial court abused its discretion because it failed to address all sixteen custody factors pursuant to 23 Pa.C.S. § 5328(a). This claim, too, is meritless.

The trial court is required to "delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S. § 5323(d). Although "there is no required amount of detail for the trial court's explanation," it is imperative that "the enumerated factors are considered, and that the custody decision is based on those consideration." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013). Failure to do so is an error of law. *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011).

Here, the court explained its reasons on the record for its decision "prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.*, 65 A.3d 946, 948 (Pa. Super. 2013). *See* N.T. Trial, 8/27/21, at 106, 110-12 (trial court explaining in detail reasons for custody order). Additionally, the court delineated in its Rule 1925(a) opinion its consideration of the custody factors. *See* Trial Court Opinion, 10/25/21, at 1-4. The court set forth each of the sixteen custody factors and explained in detail which factor favored which party. Father's argument misapprehends the record.

After our comprehensive review of the record, the parties' briefs, the GAL's brief, and the relevant law, we believe that Judge Leskinen carefully

analyzed the statutory factors with respect to custody, and we find no error or abuse of discretion in his determination. **See A.D.**, **supra**. Accordingly, we affirm the trial court's order.[7]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2022

---

[7] As a final note, we reiterate the concerns expressed by both Judge Leskinen and the GAL that the hostile and contentious relationship between the parties is emotionally damaging to Child. We have read through the text communication between the parties, as well as communication through Our Family Wizard. The language of the texts is abhorrent. We strongly suggest the parties focus on Child's mental, physical and emotional health, instead of waging war on their personal battlefield. Furthermore, as both the court and the GAL acknowledge, both parties love and care for Child. Once they realize their love for Child is greater than their hate for one another, there's hope for stability and communication in this family. Finally, after our review of the dialogue between the parties and the trial court's observations, we agree with Child's GAL, who recommended that the parties would benefit from coparenting counseling, and that the parties, Child and Amy would benefit from family counseling.