J-A27002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| Ch.D.V. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.D.V. | : | |
| | : | |
| Appellant | : | No. 678 MDA 2023 |

Appeal from the Order Entered April 12, 2023
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2018-00760

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:              **FILED: FEBRUARY 15, 2024**

C.D.V. (Father) appeals from the order, entered in the Court of Common Pleas of Cumberland County, granting Ch.D.V.'s (Mother) petition for modification of custody.  After our review, we affirm.

Mother and Father married in 2015, separated in 2017, and are the parents of Child (born May 2016).  The parties are now divorced; Mother is remarried, and Father lives with his fiancée, with whom he has a child, as well as his fiancée's two children.

Mother initiated the instant custody action in 2017, and the parties, by agreement, shared custody of Child, on a 50/50 schedule.  In reality, however, Mother testified that she was the primary caretaker. **See** N.T. Modification of Custody Hearing, 4/11/23, at 13 (Mother testifying that although "in writing,

_____

[*] Former Justice specially assigned to the Superior Court.

it was 50/50," Father would typically have custody "two days out of the week."); *id.* at 7-10 (Mother testifying she schedules and takes Child to medical appointments, pays for Child's clothing, health insurance, and activities (art club, science club, and ballet), helps Child with homework, and attends parent-teacher conferences). Father disputed much of Mother's testimony regarding who pays for what. **See** N.T. Hearing, **supra** at 36-38.

When Child started kindergarten, Father wanted to exercise his 50/50 shared custody schedule, which the parties adhered to for the first half of Child's kindergarten year. *Id.* at 14. Mother testified that Father "absolutely" loves Child, but that the schedule during the school year was not in Child's best interest. Mother testified Child was arriving at school late, appeared unkempt, and was having anxiety with the transitions. *Id.* at 15, 23.[1] Mother appealed to Child's "*de facto* grandmother," Staci Kirchhoff, to intercede on Child's behalf. The trial court described the parties' and Child's relationship with Kirchoff as follows:

> Staci Kirchoff is a remarkable woman who took Father in shortly after both of his parents died in 2011. She became a surrogate mother to him, paying for his college and helping him buy his current home. She has also been a *de facto* grandmother to [Child]. In addition to being [] Child's "Wabbie,"[1] she pays the

---

[1] On cross-examination, Mother acknowledged that Child was late to school only one time during Father's custodial time, but stated that it was more "about [Child] getting to school looking like she's presentable and having a structure and schedule throughout the week." N.T. Modification of Custody Hearing, **supra** at 23. Although Child's school never contacted Mother regarding Child's appearance, Mother stated that "other parents from Harrisburg Academy [had] reach]ed] out to [her.]" *Id.* at 26.

- 2 -

> tuition to allow [Child] to attend Harrisburg Academy, a prestigious private school.
>
> [1]A term of endearment used by the Child toward Ms. Kirchhoff. It signifies "grandmother" in Father's native Brazil. (citation omitted).

Trial Court Opinion, 6/16/23, at 2 (footnote in original).

Mother and Father, who reside only 25 minutes apart, met with Kirchhoff[2] in February 2022, and Father ultimately agreed that Child's best interests would be served by allowing Mother to have primary custody during the school year. The parties adhered to this arrangement for the remainder of Child's kindergarten year. *See* N.T. Modification of Custody Hearing, *supra* at 14.

When Child was about to start first grade, Father wanted to return to the parties' original agreement of 50/50 shared custody. Father previously worked in IT from home and is currently a stay-at-home dad. Father's fiancée works full time as a mental health/behavioral case manager for children and youth. *Id.* at 32-33.

On October 28, 2022, Mother filed a petition for modification of custody and, following the April 11, 2023 hearing, President Judge Edward E. Guido granted Mother's petition. The court reviewed the custody factors on the

---

[2] Kirchoff testified that she considers Father her "son," "the brother for my four children," and even though she and Father are somewhat estranged currently, Kirchoff testified that "[Father] will always be my son, and I'll always try and keep in touch with him[.]" *See* N.T. Hearing, *supra* at 57, 63, 68. Kirchoff is a former teacher, with a degree in early childhood and elementary education. *Id.* at 61. She testified as to the importance of a consistent routine during the school year for Child, whom she considers her "granddaughter." *Id.* at 61, 65-66.

record, *see id.* at 73-75, and ordered that Mother have primary physical custody during the school year, subject to Father's partial custody every other weekend, and that, during the summer, the parties share physical custody 50/50 on a week on/week off basis. *See* Order, 4/12/23.

Father filed a timely appeal. Both Father and the trial court have complied with Pa.R.A.P. 1925. Father raises the following issues for our review:

1. Did the trial court abuse its discretion and misapply the law in granting [Mother] primary physical custody of [Child] when that decision was against the weight of the evidence and contrary to [Child's] best interest?

2. Did the trial court commit an abuse of discretion and error of law in failing to recognize Father as more likely than Mother to encourage and permit [Child] to have frequent and continuing contact with the other party, pursuant to 23 Pa.C.S.A. § 5328(a)(1)?

3. Did the trial court abuse its discretion and err in determining that Mother performed more parental duties on behalf of [Child] than Father pursuant to 23 Pa.C.S.A. § 5328(a)(3)?

4. Did the trial court abuse its discretion and err in determining that Mother was more likely than Father to provide more stability and continuity, in [Child's] education, family life, and community pursuant to 23 Pa.C.S.A. § 5328(a)(4)?

5. Did the trial court abuse its discretion and err in determining that Mother was more likely than Father to maintain a loving, stable, consistent, and nurturing relationship with [Child] adequate for her emotional needs pursuant to 23 Pa.C.S.A. § 5328(a)(9)?

6. Did the trial court commit an abuse of discretion and error of law in determining that Mother was more likely than Father to attend to [Child's] daily physical, emotional, educational, developmental, and special needs pursuant to 23 Pa.C.S.A. § 5328(a)(10)?

- 4 -

7. Did the trial court abuse its discretion in determining that [Child] suffered from anxiety as a direct result of the number of exchanges between Mother and Father when considering "other" factors pursuant to 23 Pa.C.S.A. § 5328(a)(16)?

Appellant's Brief, at 3-4.

We address Father's claims together as each challenges the court's application of the custody factors to the evidence presented. Father argues that the court's order "was against the weight of the evidence" and gave "inappropriate weight to much of Mother's testimony[.]" Appellant's Brief, at 10.

We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. **M.P. v. M.P.**, 54 A.3d 950, 953 (Pa. Super. 2012). Because we cannot make independent factual determinations, we must accept the trial court's findings that are supported by the evidence. **Id.** The trial judge's deductions or inferences from its factual findings, however, do not bind this Court. **Id.** We may reject the trial court's conclusions, but only if they involve an error of law or are unreasonable in light of its factual findings. **Id.** **See also Smith v. Smith**, 281 A.3d 304 (Pa. Super. 2022).

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (en banc) (internal citations omitted).

Moreover, on issues of credibility and weight of the evidence, we defer to the findings of the trial court, which has had the opportunity to observe the proceedings and demeanor of the witnesses. *R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009). This Court is bound by the credibility determinations of the trial judge, "who viewed and assessed the witnesses first-hand." *R.L.P. v. R.F.M.*, 110 A.3d 201, 207-08 (Pa. Super. 2015).

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In any custody case decided under the Child Custody Act (Act), 23 Pa.C.S.A. §§ 5321 *et seq.*, the paramount concern is the best interest of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interest of the child. *Id.* at § 5338; *C.G. v. J.H.*, 193 A.3d 891, 909 (Pa. 2018). In ordering any form of custody, the court shall determine the best interest of the child by considering the following factors, set forth in section 5328(a):

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party[,] and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent[,] and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational[,] and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a)(1-16).

Here, the court heard testimony from Mother and Father, as well as Kirchoff, who is, essentially, Child's *de facto* paternal grandmother. At the conclusion of the hearing, the trial court considered the statutory custody factors, provided a detailed analysis of those factors on the record, set forth each of the custody factors and explained in detail which factor favored which party, and concluded that it was in Child's best interest for Mother to have primary custody during the school year. **See** N.T. Modification of Custody Hearing, **supra** at 73-77.

The court specifically noted that many of the custody factors were neutral, favoring neither party, and stated on the record that, "[f]ortunately for this young lady, both parents want the other party to be fully involved in her life." **Id.** at 73. Further, the court found, under "any other relevant factor," 23 Pa.C.S.A. § 5328(a)(16), that Child's anxiety would be lessened by fewer custody exchanges during the school year. **Id.** at 75. As Child matures, she may be better adept at handling transitions, but in light of Child's youth, the court's consideration here is reasonable, and the court found Mother's and Kirchoff's testimony on this issue credible. **See id.** at 13, 61, 65. **See also** Trial Court Opinion, 6/15/23, at 42. The court resolved most of the conflicts in testimony in favor of Mother. **Id.**

Father would have us reweigh the evidence, which we cannot do. "The parties cannot dictate the amount of weight the trial court places on the

evidence. Rather, the paramount concern of the trial court is the best interest of the child." **R.M.G.,** 986 A.2d at 1237 (internal citations omitted). "Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion." **Id.**

President Judge Guido's order reflects a meaningful consideration of the custody factors, and we find no error or abuse of discretion in his determination that this order is in Child's best interest. **See M.P.**, **supra**. Accordingly, we affirm.

Order affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 02/15/2024