J-A24010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| L.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| L.Z. | : | No. 577 MDA 2025 |
| v. | : | |
| | : | |
| | : | |
| E.P. | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| YORK COUNTY CHILDREN AND | : | |
| YOUTH SERVICES | : | |

Appeal from the Order Dated April 4, 2025
In the Court of Common Pleas of York County Civil Division at No(s):
2024-FC-001491-03

BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY BECK, J.:               **FILED: NOVEMBER 7, 2025**

L.P. ("Grandmother") appeals from the order entered by the York County Court of Common Pleas ("trial court") denying her request for custodial rights of her granddaughter, L.Z. ("Child"), born in May 2023.  Grandmother argues that the trial court erred in failing to consider the 23 Pa.C.S. § 5328(a) custody factors until after she filed her appeal and improperly weighed evidence of her prior involvement with York County Children and Youth Services ("CYS") in denying her custody.  We affirm.

Child was born to L.Z. ("Mother") and E.P. ("Father"). Mother and Father have never been married. Grandmother is Mother's mother. In June 2024, Mother and Father had a physically violent altercation. Following the incident, Father and Mother filed protection from abuse ("PFA") actions against each other. On July 19, 2024, the trial court granted both PFAs and directed that Mother and Father have no contact with each other. The PFAs were set to expire on July 19, 2025.[1]

On July 19, 2024, the trial court also granted a petition filed by CYS, adjudicating Child dependent. The trial court granted Mother and Father partial physical custody/visitation rights. The goal in the dependency action was reunification with Mother and Father. CYS initially placed Child in a foster home and moved her to her current foster home in October 2024.

In the interim, on July 15, 2024, Grandmother filed a complaint for custody of Child and a petition for special relief. Grandmother sought custody of Child in both the complaint and petition. On July 23, 2024, the trial court directed Grandmother to establish that she had standing to pursue her custody action. Following a hearing, the trial court found that Grandmother had standing to seek custody of Child. The trial court also directed CYS to

---

[1] Grandmother indicated in her brief that on June 20, 2025, the trial court extended the expiration date of the PFA orders. Grandmother's Brief at 16 n.1. We cannot independently confirm this extension from this record.

investigate whether Grandmother was an appropriate resource to place Child in her care through the dependency proceedings or assume custody.

Grandmother completed the requirements necessary to be considered for kinship care. Nevertheless, CYS found that modification of Child's placement from her foster parents to Grandmother was not in Child's best interests. The case subsequently proceeded to a trial on March 31, 2025, at which, inter alia, the guardian ad litem, Attorney David Worley, Grandmother, and Father testified. Relevantly, Attorney Worley testified that he believed Child should remain with her foster parents because she was thriving in their home. He further indicated that he was concerned about a prior dependency case involving Mother and Grandmother, wherein Mother was adjudicated dependent, removed from Grandmother's care, and never reunified with Grandmother. Attorney Worley indicated the prior case raised questions about what goals Grandmother had not completed.

Grandmother also testified about her prior history with CYS, which was precipitated by Grandmother filing a PFA petition against Mother when she was seventeen years old after Mother hit her. Grandmother further noted that she and Mother now have a strong relationship and that there were no barriers between her and Mother.

Ultimately, the trial court did not grant Grandmother custody or change Child's placement, leaving Child in the care of her foster parents.

Grandmother filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925.

On appeal, Grandmother raises the following questions for our review

1. Whether the trial court abused its discretion in not considering and/or analyzing the factors set forth in 23 Pa.C.S. § 5328 in making its custody determination?

2. Whether the trial court abused its discretion in placing undue weight on [Grandmother's] prior involvement with the [CYS] in or about 2019 concerning [Mother]?

Grandmother's Brief at 11 (some capitalization omitted).

As the two claims are related we will address them together. Grandmother contends that the trial court erred in failing to consider or analyze the factors set forth in section 5328(a) when issuing its custody decision. *Id.* at 46, 47-48, 58, 62-63. She asserts that at the conclusion of the March 31, 2025 trial, the trial court expressly stated that it would not conduct a thorough analysis of the section 5328 factors. *Id.* at 48-49, 58, 62. Although the trial court addressed the factors in its Rule 1925(a) opinion in response to her concise statement, Grandmother argues that this was too late as the consideration of the factors must occur prior to an appeal being filed. *Id.* at 63-65.

Additionally, Grandmother claims error in the trial court's failure to analyze any factor other than the first—the safety of the child—in rendering its decision. *Id.* at 49-54, 62-63. She argues that the failure to consider every factor in section 5328(a) "is a violation of due process (by ignoring the

Legislature's express instructions, as contained in the statute itself …)." *Id.* at 63. Grandmother contends that her own testimony establishes that she would protect Child and that she was a nurturing caregiver. *Id.* at 55-58, 66. Further, Grandmother takes issue with the trial court's focus on her prior involvement with CYS in 2019. *Id.* at 65, 67. She notes that in 2019, Mother was seventeen years old and suffering from bipolar disorder and schizophrenia; in contrast, Child is about two years old and her relationship with Child is vastly different. *Id.* at 66-67. Thus, she argues that her prior CYS involvement should have had no bearing on her ability to care for Child. *Id.* Grandmother also highlights that she provided testimony that established other factors ((a)(3), (4), (5), (9), (10) and (12)) weighed in favor of granting her custody. *Id.* at 58-61.

When deciding an appeal from a custody order, we apply the following scope and standard of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*C.M. v. M.M.*, 215 A.3d 588, 591 (Pa. Super. 2019) (citation and ellipses omitted). "In addition, with regard to issues of credibility and weight of the

evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." **S.C.B. v. J.S.B.**, 218 A.3d 905, 913 (Pa. Super. 2019) (citation omitted).

As with all custody-related matters, this Court's "paramount concern is the best interest of the child involved." **Rogowski v. Kirven**, 291 A.3d 50, 61 (Pa. Super. 2023) (citation and brackets omitted). "This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." **M.J.M. v. M.L.G.**, 63 A.3d 331, 334 (Pa. Super. 2013) (citation omitted). To that end, the Child Custody Act sets forth factors that a court must consider prior to modifying an existing custody order. **See** 23 Pa.C.S. § 5328(a). "All of the best interest factors ... are required to be considered by the trial court when entering a custody order." **D.Q. v. K.K.**, 241 A.3d 1112, 1118 (Pa. Super. 2020) (citation and brackets omitted).

The statutory factors in effect at the time of the custody hearing were as follows:

> **(a) Factors**.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:
>
> (1) Which party is more likely to ensure the safety of the child.
>
> (2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

- 6 -

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a) (effective Aug. 13, 2024 until Aug. 28, 2025).

A court must consider all of the section 5328(a) best interest factors when "ordering **any form** of custody." ***Id.*** (emphasis added). Pointedly, "[t]his Court has held that, even in cases where the trial court merely reaffirms its prior custody order, it is nevertheless making a ruling on a request to change the form of physical custody[.]" ***C.M.***, 215 A.3d at 593. Although a trial court must give "weighted consideration to those factors which affect the safety of the child," the trial court has discretion in determining "which factors are most salient and critical in each particular case." ***M.J.M***, 63 A.3d at 339.

This Court has further explained the trial court's responsibilities in entering a custody order as follows:

> Section 5323(d) provides that a trial court shall delineate the reasons for its decision on the record in open court or in a written opinion or order. Additionally, section 5323(d) requires the trial court to set forth its mandatory assessment of the [] [s]ection 5328 custody factors prior to the deadline by which a litigant must file a notice of appeal.

In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with [s]ection 5323(d).

*C.M.*, 215 A.3d at 592-93 (citations and quotation marks omitted).

Here, the trial court delineated its reasons for the custody decision in open court, without considering the section 5328(a) factors. *See* N.T., 3/31/2025, 200-03 (detailing reasons for denying Grandmother's custody petition, including her history with CYS; Grandmother's poor judgment in indicating there would be no barriers between her and Mother should she gain custody; Grandmother's failure to seek custody when she knew of the domestic violence between Mother and Father; Grandmother's anger issues; Grandmother did not have capacity to protect Child; Grandmother's poor relationship with Father; Child's behavior has improved in foster care; and Father opposes Grandmother's petition). Although the court failed to discuss the section 5328(a) factors on the record in open court or in a contemporaneously-issued written opinion with its custody order, it provided a discussion of the factors in its Rule 1925(a) opinion. Thus, the trial court did not comply with the requirements of section 5323(d). *See C.M.*, 215 A.3d at 592.

Based upon the unique factual and procedural posture of this case, however, we will not remand the matter to the trial court for the filing of a

- 9 -

separate opinion restating its analysis. Grandmother's arguments focus almost exclusively on the weight the court attributed to evidence of her prior involvement with CYS in 2019 in assessing section 5328(a)(1), and the weight given to her own testimony relating to several other factors. The trial court stated its reasons for denying Grandmother's request for custody on the record—in particular, the evidence it considered dispositive of the first factor—and Grandmother was able to raise specific allegations about this issue in her Rule 1925 concise statement and her appellate brief. *See generally Smith v. Smith*, 281 A.3d 304, 314 (Pa. Super. 2022) (rejecting father's claim that the trial court failed to timely address the section 5328(a) factors, noting the court explained its reasons on the record for its decision and delineated its detailed consideration of the custody factors in its Rule 1925(a) opinion).

Nor did the trial court's belated assessment of the section 5328(a) factors impair Grandmother's ability to raise claims on appeal concerning the weight the trial court attributed to the evidence presented. Thus, Grandmother does not demonstrate that any of her issues were lost or that she was prejudiced by the trial court's failure to address the custody factors before she filed her appeal. *See C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super. 2013) (noting appellant "has not demonstrated that any of her issues were forfeited by virtue of the trial court's approach in this case [of failing to address the child custody factors before issuing its Rule 1925(a) opinion], we discern no reason to remand this case to the trial court for further proceedings"). Our

remand for the trial court to comply with section 5323(d) and issue the findings it already made in its 1925(a) opinion in a separate order would simply entitle Grandmother to file her appeal anew—a resolution that, under the present circumstances, would serve only to delay decision in this Children's Fast Track appeal. *See R.M. v. J.S.*, 20 A.3d 496, 508 n.10 (Pa. Super. 2011) (noting that purpose a Children's Fast Track designation is to "expedite the disposition" of such cases as they have "profound effects on the lives of children as they await permanency") (citation omitted). We refuse to elevate form over substance. Accordingly, we will address Grandmother's remaining claims.

With regard to the first factor, the trial court found as follows:

The court believes that CYS is more likely to ensure the safety of Child. The court has concerns that Grandmother has insufficient protective capacity to protect Child from Mother's anger issues and possibly from Father. Grandmother has prior history with CYS, which includes a 2019 referral for Mother precipitated by Grandmother's filing of a PFA against Mother after Mother hit Grandmother. Grandmother testified that Mother had anger problems, at that time, was bipolar, and was schizophrenic. This history is a relatively small part of the Court's rationale, but it is relevant history, given the fact that Mother still has anger problems as was exhibited by her angry outbursts during this trial and her leaving the courtroom multiple times in anger. Although Grandmother reports that her relationship with Mother is strong and better now, it is very concerning that Grandmother testified that there does not need to be any boundaries between her and Mother at this time. The court believes that Grandmother and Mother are enmeshed such that giving Grandmother custody would in effect be giving Mother custody. Thus, this factor weighs in favor of CYS.

- 11 -

Trial Court Opinion, 5/28/2025, at 8; ***see also id.*** at 18 (noting it did not abuse its discretion or commit an error of law "in the weight given to [] Grandmother's prior involvement with CYS. … The court stated on the record that this history was a 'relatively small part of the [c]ourt's rationale,' yet this prior history was relevant."); N.T., 3/31/2025, at 201 (stating on the record that Grandmother's CYS history was a "relatively small part of the [c]ourt's rationale").

We discern no abuse of discretion in the trial court's findings regarding its conclusion as to the safety of Child. The record reflects Attorney Worley testified that he believed it was in Child's best interest to remain in the foster home, noting she is thriving and that her behaviors of yelling, hitting, and biting have significantly declined. N.T., 3/31/2025, at 14, 15-17; ***see also id.*** at 15-16 (noting that Child's negative behaviors started after Grandmother's visits in September 2024). Attorney Worley noted Grandmother and Father do not have a relationship and he had concerns about Grandmother's relationship with Mother. ***Id.*** at 18. He further testified about Grandmother's involvement with CYS in 2019 and noted this evidence constituted one of his objections to granting Grandmother custody. ***Id.*** at 20-21. Attorney Worley also expressed concern about an altercation between one of Child's foster parents and Grandmother at a doctor's appointment, where Grandmother yelled at the foster parent, and another between Grandmother and a CYS employee. ***Id.*** at 21, 23-24, 25.

Grandmother testified that she was involved with CYS when Mother was seventeen years old. *Id.* at 75, 104. Grandmother also stated that at that time, Mother had explosive anger problems and was diagnosed with schizophrenia and bipolar disorder. *Id.* at 77. Grandmother testified she initiated a PFA against Mother because of Mother's behavior, which included hitting Grandmother. *Id.* at 76-77, 80-82, 91. Grandmother also disputed that she yelled at Child's foster mother during visits. *Id.* at 110-11; *see also id.* at 109 (when questioned about Mother's hospitalization, Grandmother denied she screamed at the nursing staff). Grandmother confirmed that Child hit her on one occasion. *Id.* at 112-13.

Grandmother indicated that she presently has a strong bond with Mother, and that her prior experience with CYS does not prevent her from caring for Child. *Id.* at 83, 94-95, 109. She testified to her view that there should be no boundaries regarding contact with Mother, and that having any boundaries with Mother would be inappropriate. *Id.* at 108-09. Grandmother confirmed that she would allow Mother to have supervised contact with Child if she was given custody of Child. *Id.* at 73. Grandmother testified that she has not spoken with Father since the entry of the PFA, but would have supported visitation with him as well. *Id.* at 116, 120.

Father testified that he believed Child should stay in foster care. *Id.* at 154. Father stated that Grandmother and Mother were working together to get Child out of foster care so that Mother would have more time which Child.

*Id.* at 155; *see also id.* (stating that Mother bullies Grandmother and they have an enabling relationship). He further testified to the circumstances surrounding the entry of the PFA orders. *Id.* at 158.

The record further reflects several instances of Mother having angry outbursts during the hearing. *See, e.g., id.* at 16 (Mother had an outburst during Attorney Worley's testimony, yelling "[i]t's not funny"); *id.* at 158 (during Father's testimony about the PFA orders, Mother yelled that he was lying and that he was a narcissist, prompting the trial court to admonish her); *id.* at 164 (Mother requested to leave the courtroom, which the trial court granted); *id.* at 191-92 (outburst by Mother during CYS testimony about Mother's relationship with Grandmother, with the trial court stating on the record that Mother "left the courtroom for the third or fourth time in a huff of anger"). This supports the trial court's concern about Grandmother's relationship with Mother and, in particular, her protective capacity in caring for Child.

At base, Grandmother argues that she would have arrived at a different conclusion, giving more weight to her testimony and interpretation of the evidence. We decline Grandmother's invitation to reweigh the evidence so as to craft an alternative custody award based on this factor. *See Smith*, 281 A.3d at 312 ("The parties cannot dictate the amount of weight the trial court places on evidence."). Furthermore, we reject Grandmother's claim that the trial court rested its decision on this single factor, as the court provided a

- 14 -

number of reasons on the record and in its opinion for rejecting Grandmother's petition, stating at every turn that evidence of her involvement with CYS played only a small part in the court's overall determination. *See* Trial Court Opinion, 5/28/2025, at 8-18; N.T., 3/31/2025, at 200-03. Importantly, "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *E.B. v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019) (citation omitted).

It was within the trial court's discretion to weigh the evidence concerning Grandmother's involvement with CYS in 2019. As the trial court's findings are supported by the record, and we cannot reweigh the evidence, we conclude that Grandmother's claim in this regard is without merit. *See E.B.*, 209 A.3d at 468 ( "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, based on the evidence presented, given due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion in awarding custody to the prevailing party.") (citation and quotation marks omitted).

Likewise, we reject Grandmother's argument that the trial court should have weighed her testimony more favorably and found factors (a)(3), (4), (5),

(9), (10), and (12) in her favor in rendering its custody decision.[2] Grandmother makes no argument that the competent evidence did not support the trial court's conclusion; she simply asks this Court to weigh her testimony more favorably than did the trial court. Again, we cannot disturb the trial court's findings of fact and determinations regarding credibility and weight of the evidence absent an abuse of discretion. *See Smith*, 281 A.3d at 312; *see also C.M.*, 215 A.3d at 591. Thus, her argument in this regard does not merit relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/7/2025

---

[2] We note that the trial court weighed factor (a)(5) in favor of Grandmother. Trial Court Opinion, 5/28/2025, at 12. The trial court weighed (a)(4), (9), and (10) in favor of CYS. *Id.* at 11-12, 13-14. The trial court found factors (a)(3) and (12) to be neutral. *Id.* at 11, 14.